KURT A. KAPPES – SBN 146384
MICHAEL D. LANE – SBN 239517
MICHELLE L. DUCHARME – SBN 285572
GREENBERG TRAURIG, LLP
1201 K Street, Suite 1100
Sacramento, CA  95814-3938
Telephone:  (916) 442-1111
Facsimile:   (916) 448-1709
kappesk@gtlaw.com
lanemd@gtlaw.com
ducharmem@gtlaw.com

Attorneys for Defendant
E*TRADE CLEARING, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| CHARLES EVANS PATTERSON,<br><br>                        Plaintiff,<br><br>v.<br><br>E*TRADE CLEARING, a  limited liability company, and DOES 1 through 10, inclusive,<br><br>                        Defendant. | Case No.<br><br>**DECLARATION OF MICHAEL D. LANE IN SUPPORT OF NOTICE OF REMOVAL**<br><br>Removed from the Superior Court of the State of California C16-00931<br><br>Removal Filed: June 17, 2016<br>State Court Action Filed: May 12, 2016 |
|---|---|

I, Michael D. Lane, declare as follows:

1.     I am an attorney licensed to practice law in the State of California. I am an associate with the law firm of  Greenberg Traurig, LLP, attorneys of record for Defendant, E*TRADE Clearing, LLC.  I have personal knowledge of the matters set forth in this declaration, except as indicated and as to those facts I believe them to be true, and if called to testify to them, could and would do so competently.

2.     Attached as **Exhibit A** is a true and correct copy of the Summons, Original Complaint for Damages, First Amended Complaint for Damages, Notice of Case Management Conference, Notice to Plaintiffs, Notice to Defendants, and ADR Case Information in this action. No other pleadings or orders have been filed in this case as of this date.  Thus, Exhibit A constitutes the entirety of the state court file in this action.

3.     Attached as **Exhibit B** is a true and correct copy of the cover sheet and Exhibit 21.1 of the Annual Report on Form 10-K of E*TRADE Financial Corporation filed with the U.S. Securities and Exchange Commission on February 24, 2016 (the "Annual Report").

4.     The Annual Report, attached as **Exhibit B**, demonstrates E*TRADE Clearing, LLC is a Delaware limited liability company.  The Annual Report also demonstrates that E*TRADE Clearing, LLC, a single member limited liability company, is an indirect wholly-owned subsidiary of E*TRADE Financial Corporation, a Delaware corporation with its principal place of business in New York, New York.

I declare under penalty of perjury that the foregoing is true and correct, and that this Declaration was executed this 17th day of June, 2016 at Sacramento, California.


*/s/ Michael D. Lane*
MICHAEL D. LANE

1
DECLARATION OF MICHAEL D. LANE IN SUPPORT OF NOTICE OF REMOVAL

# EXHIBIT A

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

FILED

2016 MAY 12 P 2: 52

_____ H. NASH
_____ SUPERIOR COURT
_____ OF CONTRA COSTA, CA

BY_____ DEPUTY CLERK

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
E*TRADE Clearing, a Delaware Limited Liability Company, and DOES 1 through 10, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
CHARLES EVANS PATTERSON, an individual

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is: *(El nombre y dirección de la corte es:)*<br>CONTRA COSTA COUNTY SUPERIOR COURT<br>725 Court Street<br>Martinez, CA 94553 | CASE NUMBER: *(Número del Caso):*<br>C 16 - 00931 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Antony Buchignani, Esq. (State Bar No. 186528)   Telephone: (310) 557-2009   Facimile: (310) 551-0283
Theodora Oringher PC
1840 Century Park East, Suite 500, Los Angeles, CA 90067-2120

| DATE: *(Fecha)* | MAY 1 2 2016 | Clerk, by *(Secretario)* | _____ , Deputy *(Adjunto)* |
|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**[SEAL]**

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* E* Trade Clearing, A Delaware Limited Liability Company
   under: ☐ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
   ☒ other *(specify):* LLC
4. ☒ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

American LegalNet, Inc.
www.FormsWorkflow.com

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

FILED

2016 MAY 12 P 2: 52

~~~~~~ H. NASH
~~~~~ OF THE SUPERIOR COURT
COUNTY OF CONTRA COSTA, CA
BY ____ D. OPPENHEIM

1  THEODORA ORINGHER PC
   Antony Buchignani, Esq. (State Bar No. 186528)
2  1840 Century Park East, Suite 500
   Los Angeles, California  90067-2120
3  Telephone: (310) 557-2009 Facsimile: (310) 551-0283

4
   Chip Patterson (State Bar No. 231854)
5  1640 School Street
   Moraga, CA 94556
6  Telephone:  (925) 631-9100 Facsimile:  (925) 235-1096

7
   Attorneys for Plaintiff
8  CHARLES EVANS PATTERSON

PER LOCAL RULE 5 THIS
CASE IS ASSIGNED TO
DEPT ____ 9

9
               SUPERIOR COURT OF THE STATE OF CALIFORNIA
10
                    FOR THE COUNTY OF CONTRA COSTA
11
                                              C16 − 00931
12
   CHARLES EVANS PATTERSON, an          Case No.
13 individual,
                                         COMPLAINT FOR:
14          Plaintiff,
                                         1.  BREACH OF CONTRACT;
15     vs.
                                         2.  BREACH OF THE IMPLIED
16                                           COVENANT OF GOOD FAITH AND
   E*TRADE Clearing, a Delaware Limited       FAIR DEALING;
17 Liability Company, and DOES 1 through 10,
   inclusive,                            3.  BREACH OF FIDUCIARY DUTY;
18
            Defendants.                   4.  NEGLIGENCE; and
19
                                         5.  VIOLATION OF BUSINESS AND
20                                           PROFESSIONS CODE SECTION
                                             17200
21

22

23

24

25

26

27

28

   1009944.1/22212.10002
   _____
                             COMPLAINT

1    CHARLES EVANS PATTERSON ("Plaintiff") alleges against Defendants E*TRADE

2  Clearing ("Defendant") and Does 1 – 10 (collectively, "Defendants") as follows:

3                                   **THE PARTIES**

4         1.      Plaintiff is an individual residing in Contra Costa County, State of California.

5         2.      Plaintiff is informed and believes that Defendant is a limited liability company

6  organized under the laws of the State of Delaware.  Plaintiff is further informed and believes

7  that Defendant and an affiliated company, E*TRADE Securities ("ETS") are wholly owned

8  subsidiaries of E*TRADE Financial ("E*TRADE").  Plaintiff is informed and believes that

9  Defendant and ETS entered into a clearing agreement ("Clearing Agreement") pursuant to

10  which ETS agreed to introduce Plaintiff's financial account to Defendant, and Defendant

11  agreed to carry and maintain Plaintiff's account, and execute, clear and settle transactions in

12  commodity interests for Plaintiff.

13        3.      The true names and capacities, whether individual, corporate, associate or

14  otherwise, of Defendants DOES 1 through 10 are unknown to Plaintiff, who therefore sues such

15  Defendants by fictitious names.  Plaintiff will seek leave to amend this Complaint to allege the

16  true names, identities and capacities of such Defendants when they have been ascertained.

17  Plaintiff is informed and believes, and on that basis alleges, that these Defendants are

18  responsible in some manner for the events alleged in this Complaint.

19        4.       Plaintiff is informed and believes, and on that basis alleges, that at all times

20  mentioned in this Complaint, each of the Defendants was and is the agent, servant, and

21  employee of each of the other Defendants, and all of the things alleged to have been done by

22  each Defendant were done in the capacity, scope, and course of said agency, servitude, and

23  employment.

24

25

26

27

28

**JURISCITION AND VENUE**

5.    This Court has jurisdiction over the parties because Plaintiff is an individual residing in California, and Defendant has the requisite minimum contacts with this state such as to justify the Court exercising jurisdiction over Defendant.  Indeed, Defendant has substantial contacts with California, which include:

    A.    Entering into a Futures Account Agreement ("Agreement") with Plaintiff to provide Plaintiff certain services related to securities.  Pursuant to the Agreement, Plaintiff agreed to carry and maintain a securities account for Plaintiff, and execute and clear orders involving transactions for the purchase and sale of, among other things, commodities futures; forwards; single stock futures; and other securities futures; and other cash, derivative, and similar instruments.  A true and correct copy of the Agreement is attached hereto as Exhibit A.  Plaintiff is informed and believes that Defendant has entered into the same or similar agreements with numerous other residents of California, each of which involve multiple written and oral communications, and transfers of money, to and from California;

    B.    Multiple written, telephone, electronic, and other communications with Plaintiff;

    C.    Its contacts and relationship with its parent company, E\*TRADE, which, on information and belief, has numerous physical offices, employees, and customers throughout the state of California; and

    D.    Its contacts and relationship with its affiliated company, ETS, including the Clearing Agreement.  Plaintiff is informed and believes that ETS has offices and employees in the State of California, and that, pursuant to Clearing Agreement, ETS introduces accounts of California customers, including Plaintiff, to Defendant.

6.    Venue is proper in this Court, because Plaintiff resides in the County of Contra Costa, and the County of Contra Costa is where Plaintiff entered into the Agreement, and where

1   Plaintiff suffered damages from Defendant's wrongful conduct described in this Complaint.

2   **GENERAL ALLEGATIONS**

3       7.     Plaintiff has been an account holder with E*TRADE for many years, and he

4   opened his most recent futures account more than three years ago.

5       8.     Prior to moving his futures business to Defendant, Plaintiff spoke on the phone

6   with Defendant's representative, Andrew Valcik. During that call, Plaintiff explained that he had

7   previously lost funds when another broker liquidated his futures position to cover alleged margin

8   requirements without first giving him an opportunity to deposit additional funds. As a result,

9   Plaintiff sought confirmation from Mr. Valcik that he would receive prior notification if such a

10  situation were ever to occur in a futures account maintained with Defendant. Mr. Valcik

11  unequivocally confirmed that Defendant would provide such notice, and an opportunity to deposit

12  funds to satisfy margin requirements, prior to ever liquidating one of Plaintiff's positions.

13      9.     Plaintiff's conversation with Mr. Valcik is consistent with the Agreement, which

14  Plaintiff reviewed prior to opening his account with Defendant. Specifically, the Agreement

15  provides that "Market conditions permitting, E*TRADE Clearing agrees to make reasonable

16  efforts to notify Customer of any margin call or deficiency and allow Customer a reasonable

17  period of time to cure any margin deficiency." Agreement, Section 7(b)(i).

18      10.    Based on the assurances of Mr. Valcik, and the plain language of the Agreement,

19  Plaintiff entered into the Agreement with Defendant in 2014, and moved his futures business to

20  Defendant, including establishing an account with Defendant ("Account").

21      11.    Plaintiff used the Account for a variety of transactions during the past years, and

22  Defendant has recognized fees from his business. The equity in the Account and in Plaintiff's

23  other E*TRADE accounts amounted to millions of dollars.

24      12.    Plaintiff is informed and believes that, at some time in the early morning of

25  February 11, 2016, Defendant liquidated the sole position in the Account, which wiped out the

26  majority of Plaintiff's equity in the Account. As a direct result of Defendant's unilateral

27  liquidation of the Plaintiff's position in the Account, Plaintiff lost in excess of $400,000 in equity

28  in his Account.

1      13.    Defendant later claimed that the liquidation of Plaintiff's position in the Account

2 was necessitated to meet certain margin requirements – the exact scenario Plaintiff was assured

3 would not occur without prior notice to him. Yet, at no time prior to the liquidation did Defendant

4 contact Plaintiff as promised so that he could provide additional cash to cover the margin

5 requirements. Indeed, Plaintiff is informed and believes that, as of 1:35am PST on February 11,

6 2016, the equity in his account exceeded Defendant's margin requirements by tens of thousands of

7 dollars. As of that time, Defendant had made no requests of Plaintiff for additional margin, or

8 notified him of any concerns with the amount of equity in the Account.

9      14.    Plaintiff is informed and believes that such notice to Plaintiff on February 11, 2016

10 was feasible, and market conditions permitted such notice at that time. Indeed, Defendant was in

11 possession of both Plaintiff's email and his cell phone numbers precisely so that he could be

12 alerted to, and address, any last minute Account requirements.

13      15.    Plaintiff did receive an email from Defendant on February 11, 2016 at 1:38am PST,

14 which stated "Please call the Futures desk at 877-552-8887, Timothy Kohn, Risk Analyst,

15 E*Trade Securities, Chicago, Illinois." But, this email gave Plaintiff absolutely no reason to

16 believe that Defendant planned to liquidate the position in the Account, or otherwise inform

17 Plaintiff that any additional margin in the Account was required. In addition to the email not

18 referencing a margin call, potential liquidation, or any other urgent matter, when one dials the

19 number provided (877-552-8887) it goes to a company that represents itself as Fantasy Line,

20 which appears to be a one-on-one dating (or similar) service.

21      16.    On February 25, 2016, Plaintiff provided written notice to Defendant of its breach

22 of the Agreement, and demanded that Defendant compensate Plaintiff for the damages he suffered

23 as a result. On March 9, 2016, a Compliance Manager for Defendant wrote to Plaintiff rejecting

24 all of his claims.

25

26

27

28

THEODORA **O** ORINGHER
COUNSELORS AT LAW

## FIRST CAUSE OF ACTION

### (Breach of Written Agreement Against Defendant And Does 1-10)

17.    Plaintiff incorporates herein by reference paragraphs 1 through 16 of this Complaint, as if restated in their entirety.

18.    Defendants materially breached the Agreement by liquidating the position in the Account on February 11, 2016 without first providing Defendant with sufficient notice and an opportunity to provide sufficient additional margin.

19.    Plaintiff is informed and believes that market conditions on February 11, 2016 permitted Defendant to provide Plaintiff with such notice.  However, Defendant did not provide Plaintiff with any such notice.

20.    Plaintiff has performed all of its obligations under the Agreement, except those obligations that were excused by the conduct and material breaches of Defendants.

21.    As a result of Defendants' breach of the Agreement, Plaintiff has been directly and proximately damaged in an amount that will be proven at the time of trial, but which amount is no less than $200,000.

## SECOND CAUSE OF ACTION

### (Breach of The Implied Covenant Of Good Faith And Fair Dealing

### Against Defendant And Does 1-10)

22.    Plaintiff incorporates herein by reference paragraphs 1 through 16 of this Complaint, as if restated in their entirety.

23.    California law implies a covenant of good faith and fair dealing in all contracts between parties entered into in the State of California.

24.    The implied duty of good faith in the Agreement required Defendants to provide meaningful notice to Plaintiff prior to liquidating the position in the Account in order to satisfy any alleged margin requirements.  The email that Defendant sent to Plaintiff on February 11, 2016 at 1:38am did not constitute such notice.  Nevertheless, in Defendant's March 9, 2016 letter to Plaintiff, Defendant asserted that the email did constitute such notice.

1    25.    Defendant's actions and inactions set forth herein violated the implied covenant of

2 good faith and fair dealing contained in the Agreement.

3    26.    As a result of Defendants' breach of the implied covenant of good faith and fair

4 dealing in the Agreement, Plaintiff has been directly and proximately damaged in an amount that

5 will be proven at the time of trial, but which amount is no less than $200,000.

### THIRD CAUSE OF ACTION

### (Breach of Fiduciary Duty

### Against Defendant And Does 1-10)

9    27.    Plaintiff incorporates herein by reference paragraphs 1 through 16 of this

10 Complaint, as if restated in their entirety.

11    28.    By virtue of its establishment and maintenance of Plaintiff's Account, Defendant

12 owed a multitude of duties to Plaintiff, including but not limited to the duties to:

        a.    Properly supervise accounts and brokers working with customers according to industry standards;

        b.    Take reasonable care in representing facts and ensuring the full disclosure of all facts that are material to a given transaction;

        c.    Carry out its fiduciary duties of loyalty and care, including full disclosure and appropriately monitoring activities within accounts, and to put the interests of Plaintiff above those of Defendant; and

        d.    To act with high standards of commercial honor and just and equitable principles of trade to which it is subject.

22    29.    As a result of the conduct alleged in this Complaint, Defendant breached its

23 fiduciary duties to Plaintiff, including the duty of care, duty of loyalty and duty of good faith and

24 fair dealing, by failing to meet these obligations.

25    30.    As a direct result of Defendant's breach of its duties described above, Plaintiff has

26 been directly and proximately damaged in an amount that will be proven at the time of trial, but

27 which amount is no less than $200,000.

28

THEODORA ORINGHER
COUNSELORS AT LAW

1    31.    Defendants acted with reckless, willful or callous disregard for plaintiff's

2  rights and with malice, fraud or oppression toward plaintiff, thereby entitling plaintiff to an

3  award of punitive damages in accordance with proof at trial.

4  **FOURTH CAUSE OF ACTION**

5  **(Negligence Against Defendant And Does 1-10)**

6    32.    Plaintiff incorporates herein by reference paragraphs 1 through 16and 28 of this

7  Complaint, as if restated in their entirety.

8    33.    Defendant owed Plaintiff numerous duties as set forth above including but not

9  limited to the duty of care and duty to act with high standards and commercial honor, and the duty

10  to properly supervise its employees and other agents.

11    34.    As alleged herein, Defendant breached these duties owed to Plaintiff, and was

12  negligent in its actions and inactions.

13    35.    Plaintiff reasonably relied on Defendant as set forth herein.

14    36.    As a direct result of Defendant's breach of its duties described above, Plaintiff has

15  been directly and proximately damaged in an amount that will be proven at the time of trial, but

16  which amount is no less than $200,000.

17  **FIFTH CAUSE OF ACTION**

18  **(Violation of Business & Professions Code Section 17200**

19  **Against Defendant And Does 1-10)**

20    37.    Plaintiff incorporates herein by reference paragraphs 1 through 36 of this

21  Complaint, as if restated in their entirety.

22    38.    The conduct of Defendants described in this Complaint constitute unfair and

23  fraudulent business practices within the meaning of California Business & Professions Code

24  Section 17200.

25    39.    Pursuant to California Business & Professions Code Section 17204, Plaintiff seeks

26  an order of this Court enjoining Defendants, and each of them, from continuing to engage in such

27  unfair and fraudulent business practices. Further, Plaintiff seeks an order of this Court restoring to

28

1  Plaintiff all sums deposited with Defendant that were lost as a result of Defendant's unfair and

2  fraudulent business practices.

### PRAYER

4      WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

5      1.      For general and special damages in an amount to be proven at the time of trial, which

6  amount is no less than $200,000, pursuant to the First through Fourth Causes of Action;

7      2.      For punitive damages pursuant to the Third Cause of Action

8      3.      For restitution and injunctive relief as prayed for in the Fifth Cause of Action;

9      4.      For reasonable attorneys' fees and costs as permitted by the Agreement;

10     5.      For expenses and costs of suit incurred herein;

11     6.      For interest, as permitted by law; and

12     7.      For such other, further, and different relief as the Court may deem just and proper.

14  DATED: May 11, 2016                    THEODORA ORINGHER PC

16                              By:    _____
17                                     Antony Buchignani
                                       Attorneys for Plaintiff
18                                     NREA-TRC 700 LLC

THEODORA ⎬ ORINGHER
COUNSELORS AT LAW

EXHIBIT "A"

# E✶TRADE

**FUTURES ACCOUNT
AGREEMENT**
Effective as of 09/09/2013

## 1. INTRODUCTION

This Futures Account Agreement ("*Agreement*") sets forth the terms and conditions upon which E*TRADE Clearing will accept, carry and maintain one or more accounts for the undersigned customer ("*Customer*"). In connection with such account(s), E*TRADE Clearing shall execute and clear orders involving transactions for the purchase and sale of commodities and commodities futures; physical commodities; options on commodities and commodities futures; forwards; single stock futures ("*SSF*") and other security futures; options, spot and forward foreign exchange; exchange for physicals ("*EFP*"); and any other cash transaction, derivative or similar instrument (each, a "*Commodity Interest*").

## 2. DEFINITIONS

The terms set forth below shall have the following meanings:

"*Access Code*" means a unique user identification and password;

"*Applicable Law or Regulation*" means any applicable law, rule, or regulation of or administered by the CFTC (including, without limitation, the provisions of the Commodity Exchange Act and any regulation promulgated thereunder), any exchange, clearinghouse, DSRO (including, without limitation, the rulings and interpretations of the NFA) and, to the extent applicable, the SEC and FINRA, and any other governmental agency or self-regulatory organization of any jurisdiction in which E*TRADE Clearing conducts business;

"*Authorized Agent*" means any person or entity selected by Customer to provide instructions to E*TRADE Clearing with respect to any transaction or trading activity in Customer's account, including buying, selling or exchanging contracts in Commodity Interest or other property in Customer's Account. The term Authorized Agent shall include any commodity trading advisor or money manager selected by Customer;

"*Business Day*" means Monday through Friday, excluding futures exchange holidays. Although E*TRADE Clearing may conduct business on bank holidays, bank holidays are not considered Business Days for purposes relating to the services provided hereunder;

"*CFTC*" means the Commodity Futures Trading Commission of the United States of America and any successor thereto;

"*Commodity Exchange Act*" means the Commodity Exchange Act of 1936, as amended, or any successor federal statute, and the rules and regulations thereunder, all as the same shall be in effect at the time;

"*DSRO*" means designated self-regulatory organization;

"*E*TRADE Clearing*" means E*TRADE Clearing LLC and its officers, directors, employees, representatives, agents, successors and assigns, including, without limitation, E*TRADE Securities;

"*E*TRADE Affiliate*" means any affiliate of E*TRADE Clearing now or hereafter existing;

"*E*TRADE Financial*" means E*TRADE Financial Corporation and its officers, directors, employees, representatives, agents, successors and assigns. E*TRADE Financial is the parent of E*TRADE Clearing and E*TRADE Securities;

"*E*TRADE Securities*" means E*TRADE Securities LLC and its officers, directors, employees, representatives, agents, successors and assigns. E*TRADE Securities is an affiliate of E*TRADE Clearing;

"*Event of Default*" means, with respect to Customer, any of the following events: (i) a default on any obligation hereunder or otherwise in respect to any transaction or agreement with E*TRADE Clearing; (ii) a representation made is not or ceases to be true or complete in any material respect; (iii) failure to timely deposit or maintain required margin, pay any required premium or make any other payment when due as required hereunder or otherwise in respect of any Commodity Interest contract; (iv) any warrant or order of an attachment is issued or any judgment is levied against any account or Collateral of Customer; (v) a proceeding in bankruptcy or under any insolvency or other law for the protection of creditors or for the appointment of a receiver, trustee or similar officer is filed by or against Customer, (vi) an arrangement for the benefit of its creditors is made or proposed to be made, or Customer or any Collateral is subject to any agreement, order or judgment providing for Customer's dissolution, liquidation or reorganization, or for the appointment of a receiver, trustee or similar officer of Customer or such property; (vii) the death or judicial declaration of incompetency of Customer; or (viii) any other circumstance in which E*TRADE Clearing determines it is necessary for its protection to take any of the actions set forth in Section 10 herein;

"*Electronic Order Entry System*" means the electronic order entry system offered by E*TRADE Clearing or E*TRADE Securities from time to time, which allows customers to trade online or through a downloadable trading platform utilizing the Internet;

(09.18.13) FUTURES ACCOUNT AGREEMENT

"*FCM*" means futures commission merchant;

"*FDIC*" means the Federal Deposit Insurance Corporation;

"*FINRA*" means the Financial Industry Regulatory Association and any successor thereto;

"*IB*" means introducing broker;

"*NFA*" means the National Futures Association and any successor thereto;

"*NSF*" means non-sufficient funds;

"*Privacy Policy*" means the E*TRADE FINANCIAL Privacy Statement available on the Website, as the same may be amended from time to time;

"*SEC*" means the Securities and Exchange Commission of the United States of America and any successor thereto;

"*Securities Exchange Act*" means the Securities Exchange Act of 1934, as amended, or any successor federal statute, and the rules and regulations thereunder, all as the same shall be in effect at the time; and

"*Website*" means the website located at www.etrade.com or such other website as E*TRADE Clearing or E*TRADE Securities may maintain from time to time for access by its customers.

## 3. CLEARING BROKER AGREEMENT

### a. Clearing Relationship Between E*TRADE Clearing and E*TRADE Securities.

i. Customer acknowledges that E*TRADE Clearing is registered with the CFTC as an FCM, is a member of the NFA, and is registered with the SEC as a Broker-Dealer under the Securities Exchange Act. Customer further acknowledges that E*TRADE Securities serves as Customer's IB and is registered with the CFTC as such and is a member of the NFA.

ii. E*TRADE Clearing and E*TRADE Securities are each wholly owned subsidiaries of E*TRADE Financial. Customer acknowledges that E*TRADE Clearing and E*TRADE Securities are separate entities; however, E*TRADE Clearing has entered into a clearing agreement with E*TRADE Securities ("*Clearing Broker Agreement*"), pursuant to which E*TRADE Securities has agreed to introduce Customer's account to E*TRADE Clearing, and E*TRADE Clearing has agreed to carry and maintain Customer's account, and execute, clear and settle transactions in Commodity Interests for Customer.

## 4. RISK DISCLOSURE

a. **Risk Disclosure.** TRADING CONTRACTS IN COMMODITY INTERESTS IS HIGHLY SPECULATIVE AND IS ONLY SUITABLE FOR THOSE CUSTOMERS WHO UNDERSTAND AND ARE WILLING TO ASSUME THE ECONOMIC, LEGAL AND OTHER RISKS INVOLVED, AND ARE FINANCIALLY ABLE TO ASSUME LOSSES SIGNIFICANTLY EXCEEDING THE VALUE OF ANY MARGINS OR DEPOSITS. THE LOW MARGIN DEPOSITS ASSOCIATED WITH VOLATILE PRICE MOVEMENTS IN THE MARKET FOR COMMODITY INTERESTS CAN RESULT IN RAPID AND SUBSTANTIAL LOSSES. NO ONE (INCLUDING ANY FCM, IB, ASSOCIATED PERSON, AUTHORIZED AGENT, FUND MANAGER OR COMMODITY POOL OPERATOR) CAN GUARANTEE PROFITS OR THE ABSENCE OF ANY LOSS.

## 5. ACCOUNT PROVISIONS

a. **Terms and Conditions of Customer's Account.** E*TRADE Clearing shall maintain one or more accounts in Customer's name, effect transactions with and for Customer in contracts in Commodity Interests, and provide such other services or products as E*TRADE Clearing may, in its sole discretion, offer from time to time. E*TRADE Clearing reserves the right, in its sole discretion, at any time and for any reason to refuse to provide services to Customer, decline any account application, and terminate any account previously accepted as a new account.

## 6. TRADING

a. **Authorization to Trade.** Pursuant to the terms and conditions set forth hereunder, E*TRADE Clearing is authorized to purchase and sell contracts in Commodity Interests for Customer's account in accordance with Customer's oral, written or electronically transmitted instructions. E*TRADE Clearing is further authorized, without any inquiry or investigation by it, to accept orders from E*TRADE Securities or any Authorized Agent in Customer's account, on margin or otherwise, and any other instruction concerning the Customer's account. E*TRADE Clearing shall not be liable for acting on any false or erroneous instructions which appear to be genuine or accurate. Customer agrees that Customer is fully responsible for making all final decisions as to any transactions for Customer's account. Customer has considered the factors contained herein and, taking into account Customer's present and anticipated financial resources, Customer is willing and able to assume any financial risk of trading in the Commodity Interest markets.

Continued on next page

(09.18.13) FUTURES ACCOUNT AGREEMENT

b. **Utilization of the Services of Other FCMs and Broker-Dealers.** For any service provided by E*TRADE Clearing hereunder, E*TRADE Clearing may provide such service directly or utilize the services of a third party, including establishing an omnibus clearing arrangement with another FCM ("**Clearing FCM**") or utilizing a third party that is a member of any contract market or exchange of which E*TRADE Clearing is not a member. E*TRADE Clearing is authorized to make arrangements with any such third party without further authorization from Customer.

c. **Execution and Clearing.** E*TRADE Clearing is authorized to execute any order and clear any purchase, sale and delivery of the underlying Commodity Interest on any recognized contract market as E*TRADE Clearing deems appropriate, except where instructed otherwise in writing by Customer. Where the purchase, sale or delivery of the underlying Commodity Interest is executed or cleared through a Clearing FCM, all rights and obligations of E*TRADE Clearing under this Agreement shall be extended to such Clearing FCM.

d. **Transactions Subject to Applicable Law or Regulation.** All transactions in the account shall be subject to Applicable Law or Regulation, including the rules, regulations, constitution, by-laws, customs, usages, industry standards, rulings and interpretations of the exchange, clearinghouse or market where such transactions are executed and all rules and regulations of any DSRO, whether effected, executed or cleared by E*TRADE Clearing, any agent of E*TRADE Clearing or any Clearing FCM. In all transactions under this Agreement, Customer agrees that E*TRADE Clearing and Customer are each obligated to comply with all Applicable Law or Regulation. E*TRADE Clearing shall not be liable to Customer as a result of any action or inaction taken by E*TRADE Clearing to comply with Applicable Law or Regulation. E*TRADE Clearing shall also have no duty to determine whether Customer is in compliance with any Applicable Law or Regulations. If there is a change in any Applicable Law or Regulation, such change shall be binding upon E*TRADE Clearing and Customer as if made a part of this Agreement without any additional action on the part of E*TRADE Clearing. If the change is inconsistent with any provision herein, the affected provision shall be deemed modified or superseded, as the case may be, by the Applicable Law or Regulation, and all other provisions of this Agreement and provisions so modified shall in all respects continue in full force and effect.

e. **Orders and Order Entry.**

    i. E*TRADE Clearing or E*TRADE Securities will provide Customer with an Access Code, which will enable Customer to access Customer's trading account and enter orders for the account electronically through an Electronic Order Entry System using the Internet. Customer is responsible for maintaining adequate security measures to ensure that any Access Code is kept confidential at all times. Customer accepts full responsibility for the use and protection of the Access Code, which includes, but is not limited to, any order entered into the Electronic Order Entry System and any change made to Customer's account information that is entered or associated with such Access Code. If Customer becomes aware of any loss, theft or unauthorized use of its Access Code, Customer shall notify E*TRADE Clearing or E*TRADE Securities immediately, in accordance with E*TRADE policy, but no later than one (1) Business Day of discovering any unauthorized activity.

    ii. Where Customer is not promptly advised about the status of any order or instruction placed through the Electronic Order Entry System or otherwise, Customer shall immediately, but no later than twenty-four (24) hours after the order or instruction has been placed, contact E*TRADE Clearing or E*TRADE Securities, in accordance with E*TRADE policy, to verify the status of such order or instruction. E*TRADE Clearing or E*TRADE Securities shall bear no responsibility or liability for any order or instruction about which Customer fails to timely contact E*TRADE Clearing or E*TRADE Securities. Customer instructions are not valid beyond the trading session and shall only be valid for the day on which the order is placed, except where the instruction is specified and accepted as being an open order, in which case the order shall be valid beyond the trading session and cancelled at the request of Customer.

    iii. E*TRADE Clearing does not guarantee that any order or instruction placed through the Electronic Order System or otherwise will be acted on or filled. Customer acknowledges that E*TRADE Clearing retains the right, at all times , in its sole discretion, to refuse any order or instruction for any reason and may process any order or instruction in any manner it believes to be commercially reasonable. Customer further acknowledges that E*TRADE Clearing retains sole discretion with respect to the routing of trade orders (provided E*TRADE Clearing makes a good faith effort to obtain best execution) and the selection of any floor broker, and E*TRADE Clearing bears no responsibility for any such floor broker's negligence, error or inability to fill an order.

    iv. Absent a separate written agreement between Customer and E*TRADE Clearing with respect to give-ups, E*TRADE Clearing may, in its sole discretion, but shall have no obligation to, accept from any other broker any contract executed by such broker on an exchange for Customer and proposed to be "given up" to E*TRADE Clearing for clearance or carrying in Customer's account. Where E*TRADE Clearing accepts such contract, Customer authorizes E*TRADE Clearing to pay and charge to Customer's account any give-up or give-in fee that may be charged by any exchange or clearinghouse or by any executing firm or broker whom Customer or any Authorized Agent have authorized for execution in Customer's account.

(09.18.13) FUTURES ACCOUNT AGREEMENT

v. CUSTOMER ACCEPTS THE ELECTRONIC ORDER ENTRY SYSTEM "AS IS" AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW OR REGULATION, WITHOUT ANY WARRANTY OF ANY KIND, EITHER EXPRESSED OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. Notwithstanding the foregoing, numerous safeguards have been designed for and incorporated into the Electronic Order Entry System to prevent its failure, malfunction, delay or interruption. In the event of any system failure, malfunction, delay or interruption, Customer acknowledges and agrees that (i) Customer may not be able to access the system to enter new orders, modify existing orders, or cancel previously entered but not yet filled orders; and (ii) any failure, malfunction, delay or interruption may result in the loss of or priority of any order. For the avoidance of doubt, E*TRADE Clearing is not responsible for any claim, loss, damage, cost or expense arising from (y) any failure, malfunction or disruption of the Electronic Order Entry System or inability to enter or cancel any order, or (z) any fault in delivery, delay, disruption, inaccuracy or termination affecting all or part of any Electronic Order Enter System or any supporting facility, regardless of whether a claim arises in contract, tort or otherwise.

**f. Positions**

i. E*TRADE Clearing, in its sole discretion, may establish trading and position limits for Customer's account and may limit the number of open positions. Customer agrees to comply with all trading and position limits established by Applicable Law or Regulation; however, Customer acknowledges that E*TRADE Clearing may impose and enforce any additional position limit, reduction, or refusal, irrespective of whether it is required by Applicable Law or Regulation. Customer agrees: (i) not to make any trade which would have the effect of exceeding any such position limit, (ii) that E*TRADE Clearing may require at any time that Customer reduce any open positions, and (iii) that E*TRADE Clearing may refuse to accept any order, establish any new position or modify any existing order in accordance with such trading or position limits. Customer further agrees to promptly notify E*TRADE Clearing, in accordance with E*TRADE policy, if Customer is required to file position reports with any regulatory organization, DSRO or any exchange and agrees to furnish E*TRADE Clearing with copies of any such report.

ii. Customer acknowledges that approval for hedge margins does not exempt any account from any speculative positions limits. To be exempt from speculative position limits requires application and approval of a hedge exemption from the CFTC and the respective exchange on which the Commodity Interest is traded.

iii. If Customer maintains separate accounts in which, pursuant to CFTC Regulation 1.46, offsetting positions are not closed out, E*TRADE Clearing hereby advises Customer that any offsetting long and short hedge position held open in separate accounts may result in Customer being charged additional fees and commissions and the payment of additional margin, even though such offsetting positions result in no additional market gain or loss.

**g. Cross Transactions.** To comply with Applicable Law or Regulation regarding cross trade procedures and the execution of trades in which a floor broker or brokerage firm may be directly or indirectly involved as a principal, Customer agrees to E*TRADE Clearing's execution of any order against which E*TRADE Clearing, its directors, managers, officers, employees, agents or floor brokers may directly or indirectly become the opposite party, without prior notice, provided that any such execution is made in accordance with Applicable Law or Regulation. This consent shall remain in effect until Customer delivers, in accordance with E*TRADE policy, written notice to E*TRADE Clearing revoking such consent.

**h. Deliveries and Delivery Month Liquidation Instructions.**

i. Customer is responsible for providing to E*TRADE Clearing within a reasonable time appropriate liquidating instructions, funds or documents relating to any open position maturing in a delivery month, but no later than (i) in the case of a long position, five (5) Business Days prior to the first notice day and (ii) in the case of a short position, five (5) Business Days prior to the last trading day in advance of the expiration. If Customer fails to provide timely instructions, funds or documents, E*TRADE Clearing may, without notice, liquidate or cover any open position, make or receive delivery on behalf of Customer upon such terms and by such methods that E*TRADE Clearing deems proper in its sole discretion, or undertake any other action permitted pursuant to Section 10 herein, as appropriate. In the event Customer fails to deliver to E*TRADE Clearing any physical commodity sold short in compliance with Applicable Law or Regulation, or where E*TRADE Clearing deems it necessary to replace any physical commodity previously delivered to it for Customer's trading account with another physical commodity of like kind or amount, Customer designates E*TRADE Clearing as its agent to borrow or buy and deliver the same.

(09.18.13) FUTURES ACCOUNT AGREEMENT

i. **Exercise and Assignment of Commodity Options.** Although certain exchanges and clearinghouses automatically exercise some "in-the-money" options, Customer is solely responsible for taking action to exercise or prevent exercise of any option contract and agrees to instruct E*TRADE Clearing as to the exercise or other disposition of any option contract. E*TRADE Clearing is not required to take any action with respect to any option, including any action to exercise a valuable option before its expiration date or to prevent the automatic exercise of any option. Customer understands that (i) Customer is responsible at all times to notify E*TRADE Clearing of its intent to exercise an option no later than 3:15 p. m. Chicago time on the Business Day prior to the last day of trading for that option, (ii) E*TRADE Clearing's date and time for the tendering of exercise instructions may be earlier than those set by any exchange, board of trade, market or clearinghouse, and (iii) failure to provide E*TRADE Clearing with any instruction may constitute an abandonment of the option, and Customer's option may become worthless in the event Customer does not deliver instructions prior to E*TRADE Clearing's established expiration times. All short option positions are subject to assignment at any time, including positions established on the same day that exercises are assigned. Exercise and assignment notices are allocated randomly among all short options positions subject to exercise. Where Customer fails to timely provide E*TRADE Clearing with any required instruction, E*TRADE Clearing is authorized, in its sole discretion, to exercise or liquidate all or any portion of the option for Customer's account and at Customer's risk.

## 7. MARGIN AND SECURITY

a. **Margin and Deposit Requirements.** Customer shall provide to and maintain with E*TRADE Clearing margin or other Collateral in such amount and in such form as E*TRADE Clearing may from time to time require, in its sole discretion. The margin requirements of E*TRADE Clearing may exceed margins established by Applicable Law or Regulation. E*TRADE Clearing may change margin requirements at any time without notice.

b. **Account Monitoring, Margin Deficiencies, and Calls for Margin.**

i. Customer agrees to immediately forward sufficient funds to cure any margin deficiency and deposit additional margin when and as required by E*TRADE Clearing. Customer agrees to promptly meet all margin calls or cure any margin deficiency in any manner as E*TRADE Clearing shall in its sole discretion designate, including by immediate wire transfer. Customer shall be solely responsible for monitoring the account to ensure it maintains adequate margin at all times without waiting for notice or a call for margin. Market conditions permitting, E*TRADE Clearing agrees to make reasonable efforts to notify Customer of any margin call or deficiency and allow Customer a reasonable period of time to cure any margin deficiency. A reasonable period of time shall generally be deemed to be one (1) hour or less if, in E*TRADE Clearing's sole discretion, market conditions so warrant. Any deposits or funds remitted to E*TRADE Clearing shall only be deemed made or received when cleared funds are actually received by E*TRADE Clearing. If a check is not honored or paid by a bank upon presentment and E*TRADE Clearing incurs any fee in connection therewith, such as a returned check or NSF fee, E*TRADE Clearing may immediately debit Customer's account in the amount of any such fee.

ii. Notwithstanding any demand for additional margin, for any situation in which an account is under-margined, has no equity or an equity deficit, or in the event that E*TRADE Clearing is unable to contact Customer due to Customer's unavailability or a breakdown in any communication system, Customer agrees that E*TRADE Clearing retains, at all times, the right in its sole discretion to liquidate all or part of Customer's positions and/or account through any means available, without prior notice to Customer.

c. **Security Interest, General Lien and Right to Setoff.**

i. As security for Customer's obligations to E*TRADE Clearing hereunder or any other liability of Customer to E*TRADE Clearing relating to the payment or performance of any debt, obligation or liability presently outstanding or to be incurred under this Agreement, all property of Customer (except for any property held in a retirement account), including any funds, securities, negotiable instruments, physical commodities or other property, and the proceeds thereof ("***Collateral***"), which (i) E*TRADE Clearing (or any E*TRADE Affiliate) now or hereafter at any time is carrying or may have in its possession or control, (ii) is carried on the books for E*TRADE Clearing (or any E*TRADE Affiliate) for any purpose, or (iii) may become due to Customer, will be held as security to secure performance of any debt, obligation and liability to E*TRADE Clearing. Such Collateral shall be subject to a security interest, a general lien and right of setoff to discharge any debt, obligation and liability of Customer to E*TRADE Clearing, wherever or however arising and without regard to whether or not any E*TRADE Clearing (or any E*TRADE Affiliate) has made loans with respect to such Collateral. To satisfy any debt, obligation and liability of Customer to E*TRADE Clearing, E*TRADE Clearing is authorized to sell or purchase any and all Collateral, to liquidate open contracts, and redeem money market or cash deposit investments in any account of Customer (including any account at any E*TRADE Affiliate) without notice. In enforcing its security interest, lien and right to setoff, E*TRADE Clearing shall have the right, in its sole discretion, to determine the amount, order and manner of Collateral or other property to be sold or purchased and shall have all the rights and remedies available to it as a secured party under Applicable Law or Regulation.

ii. Subject to the segregation requirements of the Commodity Exchange Act, Customer grants to E*TRADE Clearing the right to pledge, repledge, hypothecate, rehypothecate, sell or purchase, invest or loan, either separately or with the property of other customers, any Collateral held by E*TRADE Clearing for any account of Customer, to any exchange or clearinghouse through which Customer's trades are executed. To the extent permitted under Applicable Law or Regulation, E*TRADE Clearing may, without prior notice to Customer, use, credit, apply or transfer any of Customer's Collateral interchangeably between any of Customer's accounts at E*TRADE Clearing (or any accounts at any E*TRADE Affiliate) as E*TRADE Clearing deems necessary in its sole discretion to satisfy margin requirements, reduce any deficit or debit balance in any Customer account. E*TRADE Clearing will confirm such application or transfer within a reasonable time. E*TRADE Clearing may also invest and reinvest any funds deposited by Customer, subject to applicable segregation requirements, and E*TRADE Clearing shall be under no obligation to pay Customer any interest on cash balances, income or to provide any other benefit derived from the investment of Customer's Collateral. Customer irrevocably appoints E*TRADE Clearing as Customer's attorney-in-fact with power of substitution to execute any documents for the perfection or registration of the security interest and general lien described herein.

## 8. COMMUNICATIONS

a. **Consent to Accept Electronic Communications.** By entering into this Agreement, Customer hereby consents to the electronic delivery from E*TRADE Clearing or E*TRADE Securities of daily confirmation, purchase and sale statements, monthly statements of activity or other communication by electronic transmission to the email address listed on the account application. This electronic service will be provided at no cost to Customer. Customer acknowledges that Customer will not receive mailed hard copies of such statements or communications. Customer further agrees and acknowledges that this consent shall be effective until revoked in writing and signed by Customer, and delivered to E*TRADE Clearing in accordance with the notification procedures set forth in this Agreement.

b. **Transmission of Records, Reports, Statements, Confirmations, Notices, Demands and Other Communications.** Pursuant to the above consent, records, reports, statements of account, confirmations, notices, demands and other communications from E*TRADE Clearing or E*TRADE Securities may be transmitted electronically via e-mail. Upon Customer's reasonable request, E*TRADE Clearing will endeavor, but is not obligated, to send such communications to Customer through United States mail, facsimile or such other means agreed upon between the parties, in which event Customer may be charged a reasonable fee for such service. All communications so made will be transmitted to Customer using the contact details listed in Customer's account application or to such other address as Customer may designate in writing to E*TRADE Clearing pursuant to E*TRADE policy. Such communications shall also be deemed transmitted when sent to Customer's e-mail address, deposited in the United States mail, or otherwise made available for Customer's immediate access, whether actually received or accessed by Customer or its Authorized Agent.

c. **Discrepancies.** SHOULD ANY ERROR, INACCURACY OR OTHER DISCREPANCY APPEAR IN ANY RECORD, REPORT, STATEMENT OF ACCOUNT, CONFIRMATION, NOTICE DEMAND OR OTHER COMMUNICATION, INCLUDING WITH RESPECT TO ANY CALL FOR MARGIN, CUSTOMER AGREES THAT IT IS CUSTOMER'S DUTY TO NOTIFY E*TRADE CLEARING, IN ACCORDANCE WITH E*TRADE POLICY, OF THE ERROR, INACCURACY OR DISCREPANCY IMMEDIATELY UPON THE EARLIER OF ACTUAL RECEIPT OF SUCH COMMUNICATION BY CUSTOMER OR THE TIME SUCH COMMUNICATION IS DEEMED TO HAVE BEEN RECEIVED BY CUSTOMER. IN THE EVENT THAT CUSTOMER FAILS TO TIMELY NOTIFY E*TRADE CLEARING OF ANY SUCH ERROR, INACCURACY OR DISCREPANCY, SUCH COMMUNICATION SHALL BE CONSIDERED RATIFIED BY CUSTOMER AND SHALL RELIEVE E*TRADE CLEARING OF ANY RESPONSIBILITY WHATSOEVER RELATIVE TO THE TRANSACTION IN QUESTION.

## 9. FEES AND CHARGES

a. **Applicable Fees and Charges.** Customer agrees to pay, as applicable (i) the amount of any debit balance or deficiency in any of Customer's accounts; (ii) all commissions, fees, expenses and other costs incurred in connection with any contracts executed, carried or cleared by E*TRADE Clearing, including but not limited to, processing and servicing charges, execution and settlement charges, and brokerage or IB fees; (iii) all regulatory, clearinghouse, exchange, NFA and other DSRO fees and charges; (iv) any taxes, incurred or imposed with respect to any contract in Commodity Interests or other transactions in or for Customer's account; and (v) any other account charges or service-related fees charged to Customer's account, including, but not limited to, wire transfer fees, statement fees and transaction fees. In the event that Customer's account is transferred to another broker, commissions and/or a transfer or service charge in connection with such transfer may be charged. If Customer has not placed any trades in Customer's account for a thirty (30) day period or longer, E*TRADE Clearing may charge an account inactivity fee.

b. **Interest for Debits and Deficiencies.** Customer agrees to pay any interest chargeable on the account for any and all debits and deficiencies at a rate set by E*TRADE Clearing from time to time, which may not be greater than what is permitted under Applicable Law or Regulation.

Continued on next page
6

(09.18.13) FUTURES ACCOUNT AGREEMENT

c. **Changes in Fees and Charges.** Subject to Applicable Law or Regulation, E*TRADE Clearing reserves the right to change or adjust its fees or charges, or to implement additional fees or charges at any time without prior notice to Customer. Notwithstanding the foregoing, E*TRADE Clearing shall endeavor to post and update on its Website any fees or charges applicable to Customer's account. Customer authorizes E*TRADE Clearing to pay any fees or charges applicable to Customer's account from Customer's trading account and, if necessary, by selling any assets in the trading account. Any fees or charges are non-refundable.

## 10. DEFAULT

a. **Customer Default and Remedies.**

i. If an Event of Default occurs, E*TRADE Clearing shall have the right, in its sole discretion and at any time, to avail itself of any of the following remedies, subject to Applicable Law or Regulation: (i) treat any or all of Customer's obligations due to E*TRADE Clearing as immediately due and payable; (ii) satisfy any obligation of Customer from Collateral, including through the set off, liquidation or closing out of any or all contracts in Commodity Interests, security or securities options, or other contracts held or carried for Customer by E*TRADE Clearing or any E*TRADE Affiliate; and/or (iii) use the proceeds of any sale of Customer's Collateral to apply against any obligation of Customer to E*TRADE Clearing or any obligation of E*TRADE Clearing to Customer.

ii. E*TRADE Clearing may, but is under no obligation to, notify Customer of its intention to avail itself of any of the remedies specified above in advance of taking any such action. Notwithstanding the foregoing, any of the remedies set forth herein may be taken without demand for margin or additional margin, without prior notice of sale or purchase, or without any other notice to Customer, and regardless of whether any ownership interest shall be solely Customer's or held jointly with others.

## 11. PRIVACY

a. **Privacy Policy.** By entering into this Agreement, Customer acknowledges receipt of the Privacy Policy. E*TRADE Clearing reserves the right to modify this Privacy Policy at any time. Customer agrees to consult the Website regularly for updates relating to the Privacy Policy.

## 12. REPRESENTATIONS AND WARRANTIES

a. **Customer Representations and Warranties.** Customer represents and warrants to E*TRADE Clearing that:

i. Customer has read and understands this Agreement and has the power and authority to enter into this Agreement, and to engage in transactions of the kind contemplated hereunder;

ii. Customer, if an individual, is of legal age and legal capacity to enter into this Agreement, to establish the account, and to enter into transactions in Commodity Interests, as contemplated by this Agreement, and such transactions are suitable for Customer and consistent with Customer's investment objectives;

iii. Customer, if a legal entity, represents that it is duly organized, validly existing, and empowered to enter into this Agreement, to establish the account, and to enter into transactions in Commodity Interests, as contemplated by this Agreement, and such transactions are suitable for Customer and do not violate any of Customer's constituent documents. Customer further represents and warrants that the person executing this Agreement on its behalf has been duly and validly authorized to do so;

iv. Neither Customer nor any partner, director, officer, member, manager, employee or affiliate of Customer is a partner, director, officer, member, manager, or employee of any FCM, broker-dealer, IB, or regulatory of self-regulatory organization, except as previously disclosed in writing to E*TRADE Clearing;

v. The accompanying account application (including any financial statements and other information furnished to E*TRADE Clearing in connection with the account) is true, complete and correct. Except as disclosed on the account application or otherwise disclosed in writing to E*TRADE Clearing, Customer is (i) not a commodity pool operator or otherwise exempt from registration under CFTC rules and (ii) is acting solely as principal and no one other than Customer has an interest in any Customer account;

vi. If Customer's account has been designated as a "hedge account", and unless Customer notifies E*TRADE Clearing to the contrary at the time it places an order with or provides instructions with respect to any order to E*TRADE Clearing, Customer represents that each such order will be a bona fide hedging transaction as defined in Applicable Law or Regulation;

(09.18.13) FUTURES ACCOUNT AGREEMENT

vii. Customer will maintain Customer's account in accordance with and shall be solely responsible for compliance with Applicable Law or Regulation. Any transaction or order made, entered, modified or cancelled by Customer in violation of any provision of this Agreement or Applicable Law or Regulation or in furtherance of a fraudulent scheme, may be deemed void as determined by E*TRADE Clearing in its sole discretion; and

viii. Customer will promptly notify E*TRADE Clearing in writing if any of the information or representations contained in the account application or this Agreement materially change, become inaccurate, or cease to be true, complete and correct in any material aspect.

## 13. IDEMNIFICATION

a. **Indemnification.** Customer agrees to indemnify, defend and hold harmless E*TRADE Clearing and its directors, officers, employees, agents, representatives and affiliates, including any E*TRADE Affiliate (each, an, "**Indemnitee**"), from and against any claim, loss, cost, fee, penalty, fine, sanction, expense, damage (including without limitation, any loss of profit or use, direct, indirect, incidental, punitive, or consequential damage) as the result, directly or indirectly, of an Event of Default on the part of Customer. Customer further agrees to pay promptly to E*TRADE Clearing all reasonable attorneys' fees incurred by E*TRADE Clearing in the enforcement of any provision of this Agreement or any action, claim or demand filed by Customer, where E*TRADE Clearing or any Indemnitee is not found to be liable or responsible, arising out of this Agreement. In the event this Agreement or any Customer account is terminated, this section shall survive.

## 14. TERMINATION

a. **Termination.**

i. This Agreement may be terminated by E*TRADE Clearing or Customer at any time upon written notice to the other party, which termination, however, shall not affect any transaction entered into and shall not relieve Customer of any Customer debt or any other obligation or liability incurred under this Agreement prior to termination.

ii. In the event of termination, Customer shall immediately liquidate positions in Customer's account and/or transfer any open Commodity Interest positions to another FCM. Notwithstanding the foregoing, Customer agrees to satisfy all liabilities to E*TRADE Clearing arising hereunder (including, but not limited to, payment of applicable debit balances, commissions and fees, including any fees associated with the transfer of Customer's positions to another FCM).

## 15. MISCELLANEOUS

a. **Force Majeure.** E*TRADE Clearing shall not be liable for any claim, loss, damage, cost, fee or expense (including without limitation, loss of profits or use, direct, indirect, incidental, punitive, or consequential damages or penalties and fines) or delay caused, directly or indirectly, by war, act of God, natural disaster, fire, flood, accident, storm government act or restriction, exchange or market ruling, suspension of trading, interruption of power supply, electronic or telephone failures, labor disputes, civil commotion or unrest, riot, lock out, enemy action, act of terrorism or other condition beyond the reasonable control of E*TRADE Clearing.

b. **Recordings.** Customer hereby authorizes E*TRADE Clearing or its affiliates, including E*TRADE Securities and any Clearing FCM, to make recordings of all telephone conversations with Customer. Customer consents to the use of such tape recordings in any forum in connection with resolving any dispute, issue or controversy. E*TRADE Clearing and its affiliates may erase or dispose of such tapes in accordance with Applicable Law or Regulation and their customary document retention policies. Customer hereby waives any right to object to the admissibility into evidence of such recordings or transcripts in any court, arbitration or other legal proceeding.

c. **Electronic Signature.** Customer consents and agrees that Customer's use of a key pad, mouse or other device to select an item, button, icon or any such similar act while utilizing any electronic service provided, including the Electronic Order Entry System, or in accessing or making any transaction regarding any agreement, acknowledgment, consent, term, disclosure or condition constitutes Customer's signature, acceptance and agreement, as if actually signed by Customer in writing. Customer further agrees that no certification authority or other third party verification is necessary in determining the enforceability of such signature or any resulting Commodity Interest contract between Customer and E*TRADE Clearing.

d. **Entire Agreement.** This Agreement embodies the entire agreement between the parties with respect to the subject matter hereof and supersedes all prior oral or written representations, agreements, promises, or other communications relating to the covered subject matter.

e. **Amendment.** Customer understands that E*TRADE Clearing may amend any of the terms and conditions of this Agreement at any time. E*TRADE Clearing reserves the right, but is no obligation, to notify Customer of any such amendment. In the event E*TRADE Clearing notifies Customer of any amendment to this Agreement, Customer acknowledges that the normal method of notifying Customer is to post an updated Agreement on the Website. Customer agrees to regularly consult the Website for updates to this Agreement.

(09.18.13) FUTURES ACCOUNT AGREEMENT

**f.** **Severability and Waiver.** Every term and provision of this Agreement is intended to be severable. If any provision of this Agreement is held to be prohibited, invalid, void or unenforceable in any respect, including by reason of any law, rule, administrative order or judicial decision, that determination will not affect the validity of the remaining provisions of this Agreement. Except as specifically permitted in this Agreement, no provision hereof shall in any respect be waived, altered, augmented, modified or amended unless agreed to in writing and signed by an authorized officer of E*TRADE Clearing.

**g.** **Assignment or Transfer.** Pursuant to Applicable Law or Regulation, E*TRADE Clearing may assign or transfer Customer's account at any time to any successor, permitted assign, or other FCM or similar entity without prior notice; provided, in the case of a bulk transfer of accounts pursuant to CFTC Regulation 1.65 or any other Applicable Law or Regulation, Customer receives written notice of the assignment or transfer and has a reasonable opportunity to object. Customer hereby consents to any such assignment or transfer.

**h.** **Successors.** This Agreement will pass to the benefit of E*TRADE Clearing and its successors, assigns and agents. Customer hereby agrees that this Agreement and all the terms and conditions hereunder, will be binding on any heir, executor, administrator, personal representative of Customer or such other assign permitted by E*TRADE Clearing.

**i. Governing Law and Consent to Jurisdiction.**

    i. This Agreement and the rights and liabilities of the parties shall, in all respects, be governed by and construed in accordance with laws of the State of New York, without regard to its conflict of law provisions.

    ii. With respect to any dispute, claim, suit, action or proceeding in connection with this Agreement, each party hereto: (i) irrevocably submits to the exclusive jurisdiction of the courts of the State of New York, the Courts of the United States or any arbitration forum located in the county, city and state of New York; (ii) waives any objection it may have at any time to the laying of venue of any proceeding and waives any claim that such proceeding has been brought in an inconvenient forum; and (iii) waives the right to object, with respect to such proceeding, that such court does not have jurisdiction over the party.

**j.** Customer agrees that no dispute, claim, suit, action or proceeding arising directly, indirectly or otherwise in connection with this Agreement or the transactions in Customer's account may be initiated by Customer unless commenced within one (1) year from the date of the disputed transaction; provided, however, that any action brought under the provisions of Section **14** of the Commodity Exchange Act may be brought at any time within two (2) years after the cause of action accrues.

Continued on next page

(09.18.13) FUTURES ACCOUNT AGREEMENT

**SUM-100**

## SUMMONS on First Amended Complaint
### *(CITACION JUDICIAL)*



FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

F I L E D
MAY 17 2016
STE... CLERK OF THE COURT
SUPERIOR COURT STATE OF CALIFORNIA
COUNTY OF CONTRA COSTA
By_____, Deputy Clerk

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
E*TRADE Clearing, a Delaware Limited Liability Company, and DOES 1 through 10, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
CHARLES EVANS PATTERSON, an individual

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>CONTRA COSTA COUNTY SUPERIOR COURT<br>725 Court Street<br>Martinez, CA 94553 | CASE NUMBER:<br>*(Número del Caso):*<br>C16-00931 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Antony Buchignani, Esq. (State Bar No. 186528)     Telephone: (310) 557-2009     Facimile: (310) 551-0283
Theodora Oringher PC
1840 Century Park East, Suite 500, Los Angeles, CA 90067-2120

| DATE:<br>*(Fecha)* MAY 17 2016 | Clerk, by<br>*(Secretario)* S. OZ... | , Deputy<br>*(Adjunto)* |
|---|---|---|

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010).)*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☑ on behalf of *(specify):* E*Trade Clearing, A Delaware     Limited Liability Company
   under: ☐ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)     ☐ CCP 416.90 (authorized person)
   ☑ other *(specify):* LLC
4. ☑ by personal delivery on *(date):*

Page 1 of 1

| Form Adapted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | American LegalNet, Inc.<br>www.FormsWorkflow.com | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |
|---|---|---|---|

THEODORA ORINGHER PC
Antony Buchignani, Esq. (State Bar No. 186528)
1840 Century Park East, Suite 500
Los Angeles, California  90067-2120
Telephone: (310) 557-2009 Facsimile: (310) 551-0283

Chip Patterson (State Bar No. 231854)
1640 School Street
Moraga, CA 94556
Telephone:  (925) 631-9100 Facsimile:  (925) 235-1096

Attorneys for Plaintiff
CHARLES EVANS PATTERSON

**F I L E D**

MAY 17 2016

STEPHEN H. NASH CLERK OF THE COURT
SUPERIOR COURT OF THE STATE OF CALIFORNIA
COUNTY OF CONTRA COSTA
By_____ Deputy Clerk
S. OZUNA

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF CONTRA COSTA

| | |
|---|---|
| CHARLES EVANS PATTERSON, an individual,<br><br>            Plaintiff,<br><br>      vs.<br><br>E*TRADE Clearing, a Delaware Limited Liability Company, and DOES 1 through 10, inclusive,<br><br>            Defendants. | Case No. C16-00931<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>1.  **BREACH OF CONTRACT;**<br><br>2.  **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;**<br><br>3.  **BREACH OF FIDUCIARY DUTY;**<br><br>4.  **NEGLIGENCE; and**<br><br>5.  **VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTION 17200** |

1010908.1/22212.10002

FIRST AMENDED COMPLAINT

1       CHARLES EVANS PATTERSON ("Plaintiff") alleges against Defendants E*TRADE

2  Clearing ("Defendant") and Does 1 – 10 (collectively, "Defendants") as follows:

3                          **THE PARTIES**

4      1.     Plaintiff is an individual residing in Contra Costa County, State of California.

5      2.     Plaintiff is informed and believes that Defendant is a limited liability company

6  organized under the laws of the State of Delaware.  Plaintiff is further informed and believes

7  that Defendant and an affiliated company, E*TRADE Securities ("ETS") are wholly owned

8  subsidiaries of E*TRADE Financial ("E*TRADE").  Plaintiff is informed and believes that

9  Defendant and ETS entered into a clearing agreement ("Clearing Agreement") pursuant to

10  which ETS agreed to introduce Plaintiff's financial account to Defendant, and Defendant

11  agreed to carry and maintain Plaintiff's account, and execute, clear and settle transactions in

12  commodity interests for Plaintiff.

13      3.     The true names and capacities, whether individual, corporate, associate or

14  otherwise, of Defendants DOES 1 through 10 are unknown to Plaintiff, who therefore sues such

15  Defendants by fictitious names.  Plaintiff will seek leave to amend this Complaint to allege the

16  true names, identities and capacities of such Defendants when they have been ascertained.

17  Plaintiff is informed and believes, and on that basis alleges, that these Defendants are

18  responsible in some manner for the events alleged in this Complaint.

19      4.     Plaintiff is informed and believes, and on that basis alleges, that at all times

20  mentioned in this Complaint, each of the Defendants was and is the agent, servant, and

21  employee of each of the other Defendants, and all of the things alleged to have been done by

22  each Defendant were done in the capacity, scope, and course of said agency, servitude, and

23  employment.

24

25

26

27

28

THEODORA ORINGHER
COUNSELORS AT LAW

## JURISCITION AND VENUE

5.     This Court has jurisdiction over the parties because Plaintiff is an individual residing in California, and Defendant has the requisite minimum contacts with this state such as to justify the Court exercising jurisdiction over Defendant. Indeed, Defendant has substantial contacts with California, which include:

      A.    Entering into a Futures Account Agreement ("Agreement") with Plaintiff to provide Plaintiff certain services related to securities. Pursuant to the Agreement, Plaintiff agreed to carry and maintain a securities account for Plaintiff, and execute and clear orders involving transactions for the purchase and sale of, among other things, commodities futures; forwards; single stock futures; and other securities futures; and other cash, derivative, and similar instruments. A true and correct copy of the Agreement is attached hereto as Exhibit A. Plaintiff is informed and believes that Defendant has entered into the same or similar agreements with numerous other residents of California, each of which involve multiple written and oral communications, and transfers of money, to and from California;

      B.    Multiple written, telephone, electronic, and other communications with Plaintiff;

      C.    Its contacts and relationship with its parent company, E*TRADE, which, on information and belief, has numerous physical offices, employees, and customers throughout the state of California; and

      D.    Its contacts and relationship with its affiliated company, ETS, including the Clearing Agreement. Plaintiff is informed and believes that ETS has offices and employees in the State of California, and that, pursuant to Clearing Agreement, ETS introduces accounts of California customers, including Plaintiff, to Defendant.

6.     Venue is proper in this Court, because Plaintiff resides in the County of Contra Costa, and the County of Contra Costa is where Plaintiff entered into the Agreement, and where

THEODORA ORINGHER
COUNSELORS AT LAW

1    Plaintiff suffered damages from Defendant's wrongful conduct described in this Complaint.

2                               **GENERAL ALLEGATIONS**

3        7.      Plaintiff has been an account holder with E*TRADE for many years, and he

4    opened his most recent futures account more than three years ago.

5        8.      Prior to moving his futures business to Defendant, Plaintiff spoke on the phone

6    with Defendant's representative, Andrew Valcik. During that call, Plaintiff explained that he had

7    previously lost funds when another broker liquidated his futures position to cover alleged margin

8    requirements without first giving him an opportunity to deposit additional funds. As a result,

9    Plaintiff sought confirmation from Mr. Valcik that he would receive prior notification if such a

10   situation were ever to occur in a futures account maintained with Defendant. Mr. Valcik

11   unequivocally confirmed that Defendant would provide such notice, and an opportunity to deposit

12   funds to satisfy margin requirements, prior to ever liquidating one of Plaintiff's positions.

13       9.      Plaintiff's conversation with Mr. Valcik is consistent with the Agreement, which

14   Plaintiff reviewed prior to opening his account with Defendant. Specifically, the Agreement

15   provides that "Market conditions permitting, E*TRADE Clearing agrees to make reasonable

16   efforts to notify Customer of any margin call or deficiency and allow Customer a reasonable

17   period of time to cure any margin deficiency." Agreement, Section 7(b)(i).

18       10.     Based on the assurances of Mr. Valcik, and the plain language of the Agreement,

19   Plaintiff entered into the Agreement with Defendant in 2014, and moved his futures business to

20   Defendant, including establishing an account with Defendant ("Account").

21       11.     Plaintiff used the Account for a variety of transactions during the past years, and

22   Defendant has recognized fees from his business. The equity in the Account and in Plaintiff's

23   other E*TRADE accounts amounted to millions of dollars.

24       12.     Plaintiff is informed and believes that, at some time in the early morning of

25   February 11, 2016, Defendant liquidated the sole position in the Account, which wiped out the

26   majority of Plaintiff's equity in the Account. As a direct result of Defendant's unilateral

27   liquidation of the Plaintiff's position in the Account, Plaintiff lost in excess of $400,000 in equity

28   in his Account.

13.   Defendant later claimed that the liquidation of Plaintiff's position in the Account was necessitated to meet certain margin requirements – the exact scenario Plaintiff was assured would not occur without prior notice to him. Yet, at no time prior to the liquidation did Defendant contact Plaintiff as promised so that he could provide additional cash to cover the margin requirements. Indeed, Plaintiff is informed and believes that, as of 1:35am PST on February 11, 2016, the equity in his account exceeded Defendant's margin requirements by tens of thousands of dollars. As of that time, Defendant had made no requests of Plaintiff for additional margin, or notified him of any concerns with the amount of equity in the Account.

14.   Plaintiff is informed and believes that such notice to Plaintiff on February 11, 2016 was feasible, and market conditions permitted such notice at that time. Indeed, Defendant was in possession of both Plaintiff's email and his cell phone numbers precisely so that he could be alerted to, and address, any last minute Account requirements.

15.   Plaintiff did receive an email from Defendant on February 11, 2016 at 1:38am PST, which stated:

> Please call the Futures desk at 877-553-8887,
>
> Timothy Kohn
> Risk Analyst
> E*TRADE Securities LLC
> 233 S. Wacker Drive – Suite 4000
> Chicago, Illinois 60606
> Futures: 877-553-8887
> Fax: 678-624-8502

But, this email gave Plaintiff absolutely no reason to believe that Defendant planned to liquidate the position in the Account, or otherwise inform Plaintiff that any additional margin in the Account was required.

16.   On February 25, 2016, Plaintiff provided written notice to Defendant of its breach of the Agreement, and demanded that Defendant compensate Plaintiff for the damages he suffered as a result. On March 9, 2016, a Compliance Manager for Defendant wrote to Plaintiff rejecting all of his claims.

THEODORA ORINGHER
COUNSELORS AT LAW

THEODORA ORINGHER
COUNSELORS AT LAW

1

**FIRST CAUSE OF ACTION**

2

**(Breach of Written Agreement Against Defendant And Does 1-10)**

3   17.   Plaintiff incorporates herein by reference paragraphs 1 through 16 of this

4   Complaint, as if restated in their entirety.

5   18.   Defendants materially breached the Agreement by liquidating the position in the

6   Account on February 11, 2016 without first providing Defendant with sufficient notice and an

7   opportunity to provide sufficient additional margin.

8   19.   Plaintiff is informed and believes that market conditions on February 11, 2016

9   permitted Defendant to provide Plaintiff with such notice.  However, Defendant did not provide

10   Plaintiff with any such notice.

11   20.   Plaintiff has performed all of its obligations under the Agreement, except those

12   obligations that were excused by the conduct and material breaches of Defendants.

13   21.   As a result of Defendants' breach of the Agreement, Plaintiff has been directly and

14   proximately damaged in an amount that will be proven at the time of trial, but which amount is no

15   less than $200,000.

16

**SECOND CAUSE OF ACTION**

17

**(Breach of The Implied Covenant Of Good Faith And Fair Dealing**

18

**Against Defendant And Does 1-10)**

19   22.   Plaintiff incorporates herein by reference paragraphs 1 through 16 of this

20   Complaint, as if restated in their entirety.

21   23.   California law implies a covenant of good faith and fair dealing in all contracts

22   between parties entered into in the State of California.

23   24.   The implied duty of good faith in the Agreement required Defendants to provide

24   meaningful notice to Plaintiff prior to liquidating the position in the Account in order to satisfy

25   any alleged margin requirements.  The email that Defendant sent to Plaintiff on February 11, 2016

26   at 1:38am did not constitute such notice.  Nevertheless, in Defendant's March 9, 2016 letter to

27   Plaintiff, Defendant asserted that the email did constitute such notice.

28

1     25.     Defendant's actions and inactions set forth herein violated the implied covenant of

2     good faith and fair dealing contained in the Agreement.

3     26.     As a result of Defendants' breach of the implied covenant of good faith and fair

4     dealing in the Agreement, Plaintiff has been directly and proximately damaged in an amount that

5     will be proven at the time of trial, but which amount is no less than $200,000.

6                              **THIRD CAUSE OF ACTION**

7                              **(Breach of Fiduciary Duty**

8                         **Against Defendant And Does 1-10)**

9     27.     Plaintiff incorporates herein by reference paragraphs 1 through 16 of this

10    Complaint, as if restated in their entirety.

11    28.     By virtue of its establishment and maintenance of Plaintiff's Account, Defendant

12    owed a multitude of duties to Plaintiff, including but not limited to the duties to:

13              a.      Properly supervise accounts and brokers working with customers according

14                      to industry standards;

15              b.      Take reasonable care in representing facts and ensuring the full disclosure

16                      of all facts that are material to a given transaction;

17              c.      Carry out its fiduciary duties of loyalty and care, including full disclosure

18                      and appropriately monitoring activities within accounts, and to put the interests of

19                      Plaintiff above those of Defendant; and

20              d.      To act with high standards of commercial honor and just and equitable

21                      principles of trade to which it is subject.

22    29.     As a result of the conduct alleged in this Complaint, Defendant breached its

23    fiduciary duties to Plaintiff, including the duty of care, duty of loyalty and duty of good faith and

24    fair dealing, by failing to meet these obligations.

25    30.     As a direct result of Defendant's breach of its duties described above, Plaintiff has

26    been directly and proximately damaged in an amount that will be proven at the time of trial, but

27    which amount is no less than $200,000.

28

1010908.1/22212.10002

1    31.    Defendants acted with reckless, willful or callous disregard for plaintiff's

2  rights and with malice, fraud or oppression toward plaintiff, thereby entitling plaintiff to an

3  award of punitive damages in accordance with proof at trial.

### FOURTH CAUSE OF ACTION

4

5   **(Negligence Against Defendant And Does 1-10)**

6    32.    Plaintiff incorporates herein by reference paragraphs 1 through 16and 28 of this

7  Complaint, as if restated in their entirety.

8    33.    Defendant owed Plaintiff numerous duties as set forth above including but not

9  limited to the duty of care and duty to act with high standards and commercial honor, and the duty

10  to properly supervise its employees and other agents.

11    34.    As alleged herein, Defendant breached these duties owed to Plaintiff, and was

12  negligent in its actions and inactions.

13    35.    Plaintiff reasonably relied on Defendant as set forth herein.

14    36.    As a direct result of Defendant's breach of its duties described above, Plaintiff has

15  been directly and proximately damaged in an amount that will be proven at the time of trial, but

16  which amount is no less than $200,000.

### FIFTH CAUSE OF ACTION

17

18   **(Violation of Business & Professions Code Section 17200**

19   **Against Defendant And Does 1-10)**

20    37.    Plaintiff incorporates herein by reference paragraphs 1 through 36 of this

21  Complaint, as if restated in their entirety.

22    38.    The conduct of Defendants described in this Complaint constitute unfair and

23  fraudulent business practices within the meaning of California Business & Professions Code

24  Section 17200.

25    39.    Pursuant to California Business & Professions Code Section 17204, Plaintiff seeks

26  an order of this Court enjoining Defendants, and each of them, from continuing to engage in such

27  unfair and fraudulent business practices. Further, Plaintiff seeks an order of this Court restoring to

28

THEODORA ORINGHER
COUNSELORS AT LAW

1  Plaintiff all sums deposited with Defendant that were lost as a result of Defendant's unfair and
2  fraudulent business practices.

3  **PRAYER**

4      WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

5      1.    For general and special damages in an amount to be proven at the time of trial, which

6  amount is no less than $200,000, pursuant to the First through Fourth Causes of Action;

7      2.    For punitive damages pursuant to the Third Cause of Action

8      3.    For restitution and injunctive relief as prayed for in the Fifth Cause of Action;

9      4.    For reasonable attorneys' fees and costs as permitted by the Agreement;

10      5.    For expenses and costs of suit incurred herein;

11      6.    For interest, as permitted by law; and

12      7.    For such other, further, and different relief as the Court may deem just and proper.

13

14  DATED: May 16, 2016               THEODORA ORINGHER PC

15

16                            By:

17                            Antony Buchignani

18                            Attorneys for Plaintiff
                          NREA-TRC 700 LLC

19

20

21

22

23

24

25

26

27

28

THEODORA ORINGHER
COUNSELORS AT LAW

EXHIBIT "A"

**E✱TRADE**

**FUTURES ACCOUNT
AGREEMENT**
Effective as of 09/09/2013

## 1. INTRODUCTION

This Futures Account Agreement ("*Agreement*") sets forth the terms and conditions upon which E*TRADE Clearing will accept, carry and maintain one or more accounts for the undersigned customer ("*Customer*"). In connection with such account(s), E*TRADE Clearing shall execute and clear orders involving transactions for the purchase and sale of commodities and commodities futures; physical commodities; options on commodities and commodities futures; forwards; single stock futures ("*SSF*") and other security futures; options, spot and forward foreign exchange; exchange for physicals ("*EFP*"); and any other cash transaction, derivative or similar instrument (each, a "*Commodity Interest*").

## 2. DEFINITIONS

The terms set forth below shall have the following meanings:

"*Access Code*" means a unique user identification and password;

"*Applicable Law or Regulation*" means any applicable law, rule, or regulation of or administered by the CFTC (including, without limitation, the provisions of the Commodity Exchange Act and any regulation promulgated thereunder), any exchange, clearinghouse, DSRO (including, without limitation, the rulings and interpretations of the NFA) and, to the extent applicable, the SEC and FINRA, and any other governmental agency or self-regulatory organization of any jurisdiction in which E*TRADE Clearing conducts business;

"*Authorized Agent*" means any person or entity selected by Customer to provide instructions to E*TRADE Clearing with respect to any transaction or trading activity in Customer's account, including buying, selling or exchanging contracts in Commodity Interest or other property in Customer's Account. The term Authorized Agent shall include any commodity trading advisor or money manager selected by Customer;

"*Business Day*" means Monday through Friday, excluding futures exchange holidays. Although E*TRADE Clearing may conduct business on bank holidays, bank holidays are not considered Business Days for purposes relating to the services provided hereunder;

"*CFTC*" means the Commodity Futures Trading Commission of the United States of America and any successor thereto;

"*Commodity Exchange Act*" means the Commodity Exchange Act of 1936, as amended, or any successor federal statute, and the rules and regulations thereunder, all as the same shall be in effect at the time;

"*DSRO*" means designated self-regulatory organization;

"*E*TRADE Clearing*" means E*TRADE Clearing LLC and its officers, directors, employees, representatives, agents, successors and assigns, including, without limitation, E*TRADE Securities;

"*E*TRADE Affiliate*" means any affiliate of E*TRADE Clearing now or hereafter existing;

"*E*TRADE Financial*" means E*TRADE Financial Corporation and its officers, directors, employees, representatives, agents, successors and assigns. E*TRADE Financial is the parent of E*TRADE Clearing and E*TRADE Securities;

"*E*TRADE Securities*" means E*TRADE Securities LLC and its officers, directors, employees, representatives, agents, successors and assigns. E*TRADE Securities is an affiliate of E*TRADE Clearing;

"*Event of Default*" means, with respect to Customer, any of the following events: (i) a default on any obligation hereunder or otherwise in respect to any transaction or agreement with E*TRADE Clearing; (ii) a representation made is not or ceases to be true or complete in any material respect; (iii) failure to timely deposit or maintain required margin, pay any required premium or make any other payment when due as required hereunder or otherwise in respect of any Commodity Interest contract; (iv) any warrant or order of an attachment is issued or any judgment is levied against any account or Collateral of Customer; (v) a proceeding in bankruptcy or under any insolvency or other law for the protection of creditors or for the appointment of a receiver, trustee or similar officer is filed by or against Customer; (vi) an arrangement for the benefit of its creditors is made or proposed to be made, or Customer or any Collateral is subject to any agreement, order or judgment providing for Customer's dissolution, liquidation or reorganization, or for the appointment of a receiver, trustee or similar officer of Customer or such property; (vii) the death or judicial declaration of incompetency of Customer; or (viii) any other circumstance in which E*TRADE Clearing determines it is necessary for its protection to take any of the actions set forth in Section 10 herein;

"*Electronic Order Entry System*" means the electronic order entry system offered by E*TRADE Clearing or E*TRADE Securities from time to time, which allows customers to trade online or through a downloadable trading platform utilizing the Internet;

(09.18.13) FUTURES ACCOUNT AGREEMENT

"*FCM*" means futures commission merchant;

"*FDIC*" means the Federal Deposit Insurance Corporation;

"*FINRA*" means the Financial Industry Regulatory Association and any successor thereto;

"*IB*" means introducing broker;

"*NFA*" means the National Futures Association and any successor thereto;

"*NSF*" means non-sufficient funds;

"*Privacy Policy*" means the E*TRADE FINANCIAL Privacy Statement available on the Website, as the same may be amended from time to time;

"*SEC*" means the Securities and Exchange Commission of the United States of America and any successor thereto;

"*Securities Exchange Act*" means the Securities Exchange Act of 1934, as amended, or any successor federal statute, and the rules and regulations thereunder, all as the same shall be in effect at the time; and

"*Website*" means the website located at www.etrade.com or such other website as E*TRADE Clearing or E*TRADE Securities may maintain from time to time for access by its customers.

3. CLEARING BROKER AGREEMENT

    a. **Clearing Relationship Between E*TRADE Clearing and E*TRADE Securities.**

        i. Customer acknowledges that E*TRADE Clearing is registered with the CFTC as an FCM, is a member of the NFA, and is registered with the SEC as a Broker-Dealer under the Securities Exchange Act. Customer further acknowledges that E*TRADE Securities serves as Customer's IB and is registered with the CFTC as such and is a member of the NFA.

        ii. E*TRADE Clearing and E*TRADE Securities are each wholly owned subsidiaries of E*TRADE Financial. Customer acknowledges that E*TRADE Clearing and E*TRADE Securities are separate entities; however, E*TRADE Clearing has entered into a clearing agreement with E*TRADE Securities ("*Clearing Broker Agreement*"), pursuant to which E*TRADE Securities has agreed to introduce Customer's account to E*TRADE Clearing, and E*TRADE Clearing has agreed to carry and maintain Customer's account, and execute, clear and settle transactions in Commodity Interests for Customer.

4. RISK DISCLOSURE

    a. **Risk Disclosure.** TRADING CONTRACTS IN COMMODITY INTERESTS IS HIGHLY SPECULATIVE AND IS ONLY SUITABLE FOR THOSE CUSTOMERS WHO UNDERSTAND AND ARE WILLING TO ASSUME THE ECONOMIC, LEGAL AND OTHER RISKS INVOLVED, AND ARE FINANCIALLY ABLE TO ASSUME LOSSES SIGNIFICANTLY EXCEEDING THE VALUE OF ANY MARGINS OR DEPOSITS. THE LOW MARGIN DEPOSITS ASSOCIATED WITH VOLATILE PRICE MOVEMENTS IN THE MARKET FOR COMMODITY INTERESTS CAN RESULT IN RAPID AND SUBSTANTIAL LOSSES. NO ONE (INCLUDING ANY FCM, IB, ASSOCIATED PERSON, AUTHORIZED AGENT, FUND MANAGER OR COMMODITY POOL OPERATOR) CAN GUARANTEE PROFITS OR THE ABSENCE OF ANY LOSS.

5. ACCOUNT PROVISIONS

    a. **Terms and Conditions of Customer's Account.** E*TRADE Clearing shall maintain one or more accounts in Customer's name, effect transactions with and for Customer in contracts in Commodity Interests, and provide such other services or products as E*TRADE Clearing may, in its sole discretion, offer from time to time. E*TRADE Clearing reserves the right, in its sole discretion, at any time and for any reason to refuse to provide services to Customer, decline any account application, and terminate any account previously accepted as a new account.

6. TRADING

    a. **Authorization to Trade.** Pursuant to the terms and conditions set forth hereunder, E*TRADE Clearing is authorized to purchase and sell contracts in Commodity Interests for Customer's account in accordance with Customer's oral, written or electronically transmitted instructions. E*TRADE Clearing is further authorized, without any inquiry or investigation by it, to accept orders from E*TRADE Securities or any Authorized Agent in Customer's account, on margin or otherwise, and any other instruction concerning the Customer's account. E*TRADE Clearing shall not be liable for acting on any false or erroneous instructions which appear to be genuine or accurate. Customer agrees that Customer is fully responsible for making all final decisions as to any transactions for Customer's account. Customer has considered the factors contained herein and, taking into account Customer's present and anticipated financial resources, Customer is willing and able to assume any financial risk of trading in the Commodity Interest markets.

Continued on next page

(09.18.13) FUTURES ACCOUNT AGREEMENT

b. **Utilization of the Services of Other FCMs and Broker-Dealers.** For any service provided by E*TRADE Clearing hereunder, E*TRADE Clearing may provide such service directly or utilize the services of a third party, including establishing an omnibus clearing arrangement with another FCM ("*Clearing FCM*") or utilizing a third party that is a member of any contract market or exchange of which E*TRADE Clearing is not a member. E*TRADE Clearing is authorized to make arrangements with any such third party without further authorization from Customer.

c. **Execution and Clearing.** E*TRADE Clearing is authorized to execute any order and clear any purchase, sale and delivery of the underlying Commodity Interest on any recognized contract market as E*TRADE Clearing deems appropriate, except where instructed otherwise in writing by Customer. Where the purchase, sale or delivery of the underlying Commodity Interest is executed or cleared through a Clearing FCM, all rights and obligations of E*TRADE Clearing under this Agreement shall be extended to such Clearing FCM.

d. **Transactions Subject to Applicable Law or Regulation.** All transactions in the account shall be subject to Applicable Law or Regulation, including the rules, regulations, constitution, by-laws, customs, usages, industry standards, rulings and interpretations of the exchange, clearinghouse or market where such transactions are executed and all rules and regulations of any DSRO, whether effected, executed or cleared by E*TRADE Clearing, any agent of E*TRADE Clearing or any Clearing FCM. In all transactions under this Agreement, Customer agrees that E*TRADE Clearing and Customer are each obligated to comply with all Applicable Law or Regulation. E*TRADE Clearing shall not be liable to Customer as a result of any action or inaction taken by E*TRADE Clearing to comply with Applicable Law or Regulation. E*TRADE Clearing shall also have no duty to determine whether Customer is in compliance with any Applicable Law or Regulations. If there is a change in any Applicable Law or Regulation, such change shall be binding upon E*TRADE Clearing and Customer as if made a part of this Agreement without any additional action on the part of E*TRADE Clearing. If the change is inconsistent with any provision herein, the affected provision shall be deemed modified or superseded, as the case may be, by the Applicable Law or Regulation, and all other provisions of this Agreement and provisions so modified shall in all respects continue in full force and effect.

e. **Orders and Order Entry.**

    i. E*TRADE Clearing or E*TRADE Securities will provide Customer with an Access Code, which will enable Customer to access Customer's trading account and enter orders for the account electronically through an Electronic Order Entry System using the Internet. Customer is responsible for maintaining adequate security measures to ensure that any Access Code is kept confidential at all times. Customer accepts full responsibility for the use and protection of the Access Code, which includes, but is not limited to, any order entered into the Electronic Order Entry System and any change made to Customer's account information that is entered or associated with such Access Code. If Customer becomes aware of any loss, theft or unauthorized use of its Access Code, Customer shall notify E*TRADE Clearing or E*TRADE Securities immediately, in accordance with E*TRADE policy, but no later than one (1) Business Day of discovering any unauthorized activity.

    ii. Where Customer is not promptly advised about the status of any order or instruction placed through the Electronic Order Entry System or otherwise, Customer shall immediately, but no later than twenty-four (24) hours after the order or instruction has been placed, contact E*TRADE Clearing or E*TRADE Securities, in accordance with E*TRADE policy, to verify the status of such order or instruction. E*TRADE Clearing or E*TRADE Securities shall bear no responsibility or liability for any order or instruction about which Customer fails to timely contact E*TRADE Clearing or E*TRADE Securities. Customer instructions are not valid beyond the trading session and shall only be valid for the day on which the order is placed, except where the instruction is specified and accepted as being an open order, in which case the order shall be valid beyond the trading session and cancelled at the request of Customer.

    iii. E*TRADE Clearing does not guarantee that any order or instruction placed through the Electronic Order System or otherwise will be acted on or filled. Customer acknowledges that E*TRADE Clearing retains the right, at all times , in its sole discretion, to refuse any order or instruction for any reason and may process any order or instruction in any manner it believes to be commercially reasonable. Customer further acknowledges that E*TRADE Clearing retains sole discretion with respect to the routing of trade orders (provided E*TRADE Clearing makes a good faith effort to obtain best execution) and the selection of any floor broker, and E*TRADE Clearing bears no responsibility for any such floor broker's negligence, error or inability to fill an order.

    iv. Absent a separate written agreement between Customer and E*TRADE Clearing with respect to give-ups, E*TRADE Clearing may, in its sole discretion, but shall have no obligation to, accept from any other broker any contract executed by such broker on an exchange for Customer and proposed to be "given up" to E*TRADE Clearing for clearance or carrying in Customer's account. Where E*TRADE Clearing accepts such contract, Customer authorizes E*TRADE Clearing to pay and charge to Customer's account any give-up or give-in fee that may be charged by any exchange or clearinghouse or by any executing firm or broker whom Customer or any Authorized Agent have authorized for execution in Customer's account.

(08.18.13) FUTURES ACCOUNT AGREEMENT

v. CUSTOMER ACCEPTS THE ELECTRONIC ORDER ENTRY SYSTEM "AS IS" AND, TO THE EXTENT PERMITTED BY APPLICABLE LAW OR REGULATION, WITHOUT ANY WARRANTY OF ANY KIND, EITHER EXPRESSED OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. Notwithstanding the foregoing, numerous safeguards have been designed for and incorporated into the Electronic Order Entry System to prevent its failure, malfunction, delay or interruption. In the event of any system failure, malfunction, delay or interruption, Customer acknowledges and agrees that (i) Customer may not be able to access the system to enter new orders, modify existing orders, or cancel previously entered but not yet filled orders; and (ii) any failure, malfunction, delay or interruption may result in the loss of or priority of any order. For the avoidance of doubt, E*TRADE Clearing is not responsible for any claim, loss, damage, cost or expense arising from (y) any failure, malfunction or disruption of the Electronic Order Entry System or inability to enter or cancel any order, or (z) any fault in delivery, delay, disruption, inaccuracy or termination affecting all or part of any Electronic Order Enter System or any supporting facility, regardless of whether a claim arises in contract, tort or otherwise.

### f. Positions

i. E*TRADE Clearing, in its sole discretion, may establish trading and position limits for Customer's account and may limit the number of open positions. Customer agrees to comply with all trading and position limits established by Applicable Law or Regulation; however, Customer acknowledges that E*TRADE Clearing may impose and enforce any additional position limit, reduction, or refusal, irrespective of whether it is required by Applicable Law or Regulation. Customer agrees: (i) not to make any trade which would have the effect of exceeding any such position limit, (ii) that E*TRADE Clearing may require at any time that Customer reduce any open positions, and (iii) that E*TRADE Clearing may refuse to accept any order, establish any new position or modify any existing order in accordance with such trading or position limits. Customer further agrees to promptly notify E*TRADE Clearing, in accordance with E*TRADE policy, if Customer is required to file position reports with any regulatory organization, DSRO or any exchange and agrees to furnish E*TRADE Clearing with copies of any such report.

ii. Customer acknowledges that approval for hedge margins does not exempt any account from any speculative positions limits. To be exempt from speculative position limits requires application and approval of a hedge exemption from the CFTC and the respective exchange on which the Commodity Interest is traded.

iii. If Customer maintains separate accounts in which, pursuant to CFTC Regulation 1.46, offsetting positions are not closed out, E*TRADE Clearing hereby advises Customer that any offsetting long and short hedge position held open in separate accounts may result in Customer being charged additional fees and commissions and the payment of additional margin, even though such offsetting positions result in no additional market gain or loss.

### g. Cross Transactions.

To comply with Applicable Law or Regulation regarding cross trade procedures and the execution of trades in which a floor broker or brokerage firm may be directly or indirectly involved as a principal, Customer agrees to E*TRADE Clearing's execution of any order against which E*TRADE Clearing, its directors, managers, officers, employees, agents or floor brokers may directly or indirectly become the opposite party, without prior notice, provided that any such execution is made in accordance with Applicable Law or Regulation. This consent shall remain in effect until Customer delivers, in accordance with E*TRADE policy, written notice to E*TRADE Clearing revoking such consent.

### h. Deliveries and Delivery Month Liquidation Instructions.

i. Customer is responsible for providing to E*TRADE Clearing within a reasonable time appropriate liquidating instructions, funds or documents relating to any open position maturing in a delivery month, but no later than (i) in the case of a long position, five (5) Business Days prior to the first notice day and (ii) in the case of a short position, five (5) Business Days prior to the last trading day in advance of the expiration. If Customer fails to provide timely instructions, funds or documents, E*TRADE Clearing may, without notice, liquidate or cover any open position, make or receive delivery on behalf of Customer upon such terms and by such methods that E*TRADE Clearing deems proper in its sole discretion, or undertake any other action permitted pursuant to Section 10 herein, as appropriate. In the event Customer fails to deliver to E*TRADE Clearing any physical commodity sold short in compliance with Applicable Law or Regulation, or where E*TRADE Clearing deems it necessary to replace any physical commodity previously delivered to it for Customer's trading account with another physical commodity of like kind or amount, Customer designates E*TRADE Clearing as its agent to borrow or buy and deliver the same.

(09.18.13) FUTURES ACCOUNT AGREEMENT

i.   **Exercise and Assignment of Commodity Options.** Although certain exchanges and clearinghouses automatically exercise some "in-the-money" options, Customer is solely responsible for taking action to exercise or prevent exercise of any option contract and agrees to instruct E*TRADE Clearing as to the exercise or other disposition of any option contract. E*TRADE Clearing is not required to take any action with respect to any option, including any action to exercise a valuable option before its expiration date or to prevent the automatic exercise of any option. Customer understands that (i) Customer is responsible at all times to notify E*TRADE Clearing of its intent to exercise an option no later than 3:15 p. m. Chicago time on the Business Day prior to the last day of trading for that option, (ii) E*TRADE Clearing's date and time for the tendering of exercise instructions may be earlier than those set by any exchange, board of trade, market or clearinghouse, and (iii) failure to provide E*TRADE Clearing with any instruction may constitute an abandonment of the option, and Customer's option may become worthless in the event Customer does not deliver instructions prior to E*TRADE Clearing's established expiration times. All short option positions are subject to assignment at any time, including positions established on the same day that exercises are assigned. Exercise and assignment notices are allocated randomly among all short options positions subject to exercise. Where Customer fails to timely provide E*TRADE Clearing with any required instruction, E*TRADE Clearing is authorized, in its sole discretion, to exercise or liquidate all or any portion of the option for Customer's account and at Customer's risk.

# 7. MARGIN AND SECURITY

a.   **Margin and Deposit Requirements.** Customer shall provide to and maintain with E*TRADE Clearing margin or other Collateral in such amount and in such form as E*TRADE Clearing may from time to time require, in its sole discretion. The margin requirements of E*TRADE Clearing may exceed margins established by Applicable Law or Regulation. E*TRADE Clearing may change margin requirements at any time without notice.

b.   **Account Monitoring, Margin Deficiencies, and Calls for Margin.**

i.   Customer agrees to immediately forward sufficient funds to cure any margin deficiency and deposit additional margin when and as required by E*TRADE Clearing. Customer agrees to promptly meet all margin calls or cure any margin deficiency in any manner as E*TRADE Clearing shall in its sole discretion designate, including by immediate wire transfer. Customer shall be solely responsible for monitoring the account to ensure it maintains adequate margin at all times without waiting for notice or a call for margin. Market conditions permitting, E*TRADE Clearing agrees to make reasonable efforts to notify Customer of any margin call or deficiency and allow Customer a reasonable period of time to cure any margin deficiency. A reasonable period of time shall generally be deemed to be one (1) hour or less if, in E*TRADE Clearing's sole discretion, market conditions so warrant. Any deposits or funds remitted to E*TRADE Clearing shall only be deemed made or received when cleared funds are actually received by E*TRADE Clearing. If a check is not honored or paid by a bank upon presentment and E*TRADE Clearing incurs any fee in connection therewith, such as a returned check or NSF fee, E*TRADE Clearing may immediately debit Customer's account in the amount of any such fee.

ii.   Notwithstanding any demand for additional margin, for any situation in which an account is under-margined, has no equity or an equity deficit, or in the event that E*TRADE Clearing is unable to contact Customer due to Customer's unavailability or a breakdown in any communication system, Customer agrees that E*TRADE Clearing retains, at all times, the right in its sole discretion to liquidate all or part of Customer's positions and/or account through any means available, without prior notice to Customer.

c.   **Security Interest, General Lien and Right to Setoff.**

i.   As security for Customer's obligations to E*TRADE Clearing hereunder or any other liability of Customer to E*TRADE Clearing relating to the payment or performance of any debt, obligation or liability presently outstanding or to be incurred under this Agreement, all property of Customer (except for any property held in a retirement account), including any funds, securities, negotiable instruments, physical commodities or other property, and the proceeds thereof (*"Collateral"*), which (i) E*TRADE Clearing (or any E*TRADE Affiliate) now or hereafter at any time is carrying or may have in its possession or control, (ii) is carried on the books for E*TRADE Clearing (or any E*TRADE Affiliate) for any purpose, or (iii) may become due to Customer, will be held as security to secure performance of any debt, obligation and liability to E*TRADE Clearing. Such Collateral shall be subject to a security interest, a general lien and right of setoff to discharge any debt, obligation and liability of Customer to E*TRADE Clearing, wherever or however arising and without regard to whether or not any E*TRADE Clearing (or any E*TRADE Affiliate) has made loans with respect to such Collateral. To satisfy any debt, obligation and liability of Customer to E*TRADE Clearing, E*TRADE Clearing is authorized to sell or purchase any and all Collateral, to liquidate open contracts, and redeem money market or cash deposit investments in any account of Customer (including any account at any E*TRADE Affiliate) without notice. In enforcing its security interest, lien and right to setoff, E*TRADE Clearing shall have the right, in its sole discretion, to determine the amount, order and manner of Collateral or other property to be sold or purchased and shall have all the rights and remedies available to it as a secured party under Applicable Law or Regulation.

Continued on next page
5

(09.18.13) FUTURES ACCOUNT AGREEMENT

ii. Subject to the segregation requirements of the Commodity Exchange Act, Customer grants to E*TRADE Clearing the right to pledge, repledge, hypothecate, rehypothecate, sell or purchase, invest or loan, either separately or with the property of other customers, any Collateral held by E*TRADE Clearing for any account of Customer, to any exchange or clearinghouse through which Customer's trades are executed. To the extent permitted under Applicable Law or Regulation, E*TRADE Clearing may, without prior notice to Customer, use, credit, apply or transfer any of Customer's Collateral interchangeably between any of Customer's accounts at E*TRADE Clearing (or any accounts at any E*TRADE Affiliate) as E*TRADE Clearing deems necessary in its sole discretion to satisfy margin requirements, reduce any deficit or debit balance in any Customer account. E*TRADE Clearing will confirm such application or transfer within a reasonable time. E*TRADE Clearing may also invest and reinvest any funds deposited by Customer, subject to applicable segregation requirements, and E*TRADE Clearing shall be under no obligation to pay Customer any interest on cash balances, income or to provide any other benefit derived from the investment of Customer's Collateral. Customer irrevocably appoints E*TRADE Clearing as Customer's attorney-in-fact with power of substitution to execute any documents for the perfection or registration of the security interest and general lien described herein.

## 8. COMMUNICATIONS

a. **Consent to Accept Electronic Communications.** By entering into this Agreement, Customer hereby consents to the electronic delivery from E*TRADE Clearing or E*TRADE Securities of daily confirmation, purchase and sale statements, monthly statements of activity or other communication by electronic transmission to the email address listed on the account application. This electronic service will be provided at no cost to Customer. Customer acknowledges that Customer will not receive mailed hard copies of such statements or communications. Customer further agrees and acknowledges that this consent shall be effective until revoked in writing and signed by Customer, and delivered to E*TRADE Clearing in accordance with the notification procedures set forth in this Agreement.

b. **Transmission of Records, Reports, Statements, Confirmations, Notices, Demands and Other Communications.** Pursuant to the above consent, records, reports, statements of account, confirmations, notices, demands and other communications from E*TRADE Clearing or E*TRADE Securities may be transmitted electronically via e-mail. Upon Customer's reasonable request, E*TRADE Clearing will endeavor, but is not obligated, to send such communications to Customer through United States mail, facsimile or such other means agreed upon between the parties, in which event Customer may be charged a reasonable fee for such service. All communications so made will be transmitted to Customer using the contact details listed in Customer's account application or to such other address as Customer may designate in writing to E*TRADE Clearing pursuant to E*TRADE policy. Such communications shall also be deemed transmitted when sent to Customer's e-mail address, deposited in the United States mail, or otherwise made available for Customer's immediate access, whether actually received or accessed by Customer or its Authorized Agent.

c. **Discrepancies.** SHOULD ANY ERROR, INACCURACY OR OTHER DISCREPANCY APPEAR IN ANY RECORD, REPORT, STATEMENT OF ACCOUNT, CONFIRMATION, NOTICE DEMAND OR OTHER COMMUNICATION, INCLUDING WITH RESPECT TO ANY CALL FOR MARGIN, CUSTOMER AGREES THAT IT IS CUSTOMER'S DUTY TO NOTIFY E*TRADE CLEARING, IN ACCORDANCE WITH E*TRADE POLICY, OF THE ERROR, INACCURACY OR DISCREPANCY IMMEDIATELY UPON THE EARLIER OF ACTUAL RECEIPT OF SUCH COMMUNICATION BY CUSTOMER OR THE TIME SUCH COMMUNICATION IS DEEMED TO HAVE BEEN RECEIVED BY CUSTOMER. IN THE EVENT THAT CUSTOMER FAILS TO TIMELY NOTIFY E*TRADE CLEARING OF ANY SUCH ERROR, INACCURACY OR DISCREPANCY, SUCH COMMUNICATION SHALL BE CONSIDERED RATIFIED BY CUSTOMER AND SHALL RELIEVE E*TRADE CLEARING OF ANY RESPONSIBILITY WHATSOEVER RELATIVE TO THE TRANSACTION IN QUESTION.

## 9. FEES AND CHARGES

a. **Applicable Fees and Charges.** Customer agrees to pay, as applicable (i) the amount of any debit balance or deficiency in any of Customer's accounts; (ii) all commissions, fees, expenses and other costs incurred in connection with any contracts executed, carried or cleared by E*TRADE Clearing, including but not limited to, processing and servicing charges, execution and settlement charges, and brokerage or IB fees; (iii) all regulatory, clearinghouse, exchange, NFA and other DSRO fees and charges; (iv) any taxes, incurred or imposed with respect to any contract in Commodity Interests or other transactions in or for Customer's account; and (v) any other account charges or service-related fees charged to Customer's account, including, but not limited to, wire transfer fees, statement fees and transaction fees. In the event that Customer's account is transferred to another broker, commissions and/or a transfer or service charge in connection with such transfer may be charged. If Customer has not placed any trades in Customer's account for a thirty (30) day period or longer, E*TRADE Clearing may charge an account inactivity fee.

b. **Interest for Debits and Deficiencies.** Customer agrees to pay any interest chargeable on the account for any and all debits and deficiencies at a rate set by E*TRADE Clearing from time to time, which may not be greater than what is permitted under Applicable Law or Regulation.

Continued on next page
(08.18.13) FUTURES ACCOUNT AGREEMENT

c.   **Changes in Fees and Charges.**  Subject to Applicable Law or Regulation, E*TRADE Clearing reserves the right to change or adjust its fees or charges, or to implement additional fees or charges at any time without prior notice to Customer. Notwithstanding the foregoing, E*TRADE Clearing shall endeavor to post and update on its Website any fees or charges applicable to Customer's account. Customer authorizes E*TRADE Clearing to pay any fees or charges applicable to Customer's account from Customer's trading account and, if necessary, by selling any assets in the trading account. Any fees or charges are non-refundable.

## 10. DEFAULT

a. **Customer Default and Remedies.**

i. If an Event of Default occurs, E*TRADE Clearing shall have the right, in its sole discretion and at any time, to avail itself of any of the following remedies, subject to Applicable Law or Regulation: (i) treat any or all of Customer's obligations due to E*TRADE Clearing as immediately due and payable; (ii) satisfy any obligation of Customer from Collateral, including through the set off, liquidation or closing out of any or all contracts in Commodity Interests, security or securities options, or other contracts held or carried for Customer by E*TRADE Clearing or any E*TRADE Affiliate; and/or (iii) use the proceeds of any sale of Customer's Collateral to apply against any obligation of Customer to E*TRADE Clearing or any obligation of E*TRADE Clearing to Customer.

ii. E*TRADE Clearing may, but is under no obligation to, notify Customer of its intention to avail itself of any of the remedies specified above in advance of taking any such action. Notwithstanding the foregoing, any of the remedies set forth herein may be taken without demand for margin or additional margin, without prior notice of sale or purchase, or without any other notice to Customer, and regardless of whether any ownership interest shall be solely Customer's or held jointly with others.

## 11. PRIVACY

a. **Privacy Policy.** By entering into this Agreement, Customer acknowledges receipt of the Privacy Policy. E*TRADE Clearing reserves the right to modify this Privacy Policy at any time. Customer agrees to consult the Website regularly for updates relating to the Privacy Policy.

## 12. REPRESENTATIONS AND WARRANTIES

a. **Customer Representations and Warranties.** Customer represents and warrants to E*TRADE Clearing that:

i. Customer has read and understands this Agreement and has the power and authority to enter into this Agreement, and to engage in transactions of the kind contemplated hereunder;

ii. Customer, if an individual, is of legal age and legal capacity to enter into this Agreement, to establish the account, and to enter into transactions in Commodity Interests, as contemplated by this Agreement, and such transactions are suitable for Customer and consistent with Customer's investment objectives;

iii. Customer, if a legal entity, represents that it is duly organized, validly existing, and empowered to enter into this Agreement, to establish the account, and to enter into transactions in Commodity Interests, as contemplated by this Agreement, and such transactions are suitable for Customer and do not violate any of Customer's constituent documents. Customer further represents and warrants that the person executing this Agreement on its behalf has been duly and validly authorized to do so;

iv. Neither Customer nor any partner, director, officer, member, manager, employee or affiliate of Customer is a partner, director, officer, member, manager, or employee of any FCM, broker-dealer, IB, or regulatory of self-regulatory organization, except as previously disclosed in writing to E*TRADE Clearing;

v. The accompanying account application (including any financial statements and other information furnished to E*TRADE Clearing in connection with the account) is true, complete and correct. Except as disclosed on the account application or otherwise disclosed in writing to E*TRADE Clearing, Customer is (i) not a commodity pool operator or otherwise exempt from registration under CFTC rules and (ii) is acting solely as principal and no one other than Customer has an interest in any Customer account;

vi. If Customer's account has been designated as a "hedge account", and unless Customer notifies E*TRADE Clearing to the contrary at the time it places an order with or provides instructions with respect to any order to E*TRADE Clearing, Customer represents that each such order will be a bona fide hedging transaction as defined in Applicable Law or Regulation;

**Continued on next page**

7

(09.18.13) FUTURES ACCOUNT AGREEMENT

vii. Customer will maintain Customer's account in accordance with and shall be solely responsible for compliance with Applicable Law or Regulation. Any transaction or order made, entered, modified or cancelled by Customer in violation of any provision of this Agreement or Applicable Law or Regulation or in furtherance of a fraudulent scheme, may be deemed void as determined by E*TRADE Clearing in its sole discretion; and

viii. Customer will promptly notify E*TRADE Clearing in writing if any of the information or representations contained in the account application or this Agreement materially change, become inaccurate, or cease to be true, complete and correct in any material aspect.

## 13. IDEMNIFICATION

a. **Indemnification.** Customer agrees to indemnify, defend and hold harmless E*TRADE Clearing and its directors, officers, employees, agents, representatives and affiliates, including any E*TRADE Affiliate (each, an, *"Indemnitee"*), from and against any claim, loss, cost, fee, penalty, fine, sanction, expense, damage (including without limitation, any loss of profit or use, direct, indirect, incidental, punitive, or consequential damage) as the result, directly or indirectly, of an Event of Default on the part of Customer. Customer further agrees to pay promptly to E*TRADE Clearing all reasonable attorneys' fees incurred by E*TRADE Clearing in the enforcement of any provision of this Agreement or any action, claim or demand filed by Customer, where E*TRADE Clearing or any Indemnitee is not found to be liable or responsible, arising out of this Agreement. In the event this Agreement or any Customer account is terminated, this section shall survive.

## 14. TERMINATION

a. **Termination.**

i. This Agreement may be terminated by E*TRADE Clearing or Customer at any time upon written notice to the other party, which termination, however, shall not affect any transaction entered into and shall not relieve Customer of any Customer debt or any other obligation or liability incurred under this Agreement prior to termination.

ii. In the event of termination, Customer shall immediately liquidate positions in Customer's account and/or transfer any open Commodity Interest positions to another FCM. Notwithstanding the foregoing, Customer agrees to satisfy all liabilities to E*TRADE Clearing arising hereunder (including, but not limited to, payment of applicable debit balances, commissions and fees, including any fees associated with the transfer of Customer's positions to another FCM).

## 15. MISCELLANEOUS

a. **Force Majeure.** E*TRADE Clearing shall not be liable for any claim, loss, damage, cost, fee or expense (including without limitation, loss of profits or use, direct, indirect, incidental, punitive, or consequential damages or penalties and fines) or delay caused, directly or indirectly, by war, act of God, natural disaster, fire, flood, accident, storm government act or restriction, exchange or market ruling, suspension of trading, interruption of power supply, electronic or telephone failures, labor disputes, civil commotion or unrest, riot, lock out, enemy action, act of terrorism or other condition beyond the reasonable control of E*TRADE Clearing.

b. **Recordings.** Customer hereby authorizes E*TRADE Clearing or its affiliates, including E*TRADE Securities and any Clearing FCM, to make recordings of all telephone conversations with Customer. Customer consents to the use of such tape recordings in any forum in connection with resolving any dispute, issue or controversy. E*TRADE Clearing and its affiliates may erase or dispose of such tapes in accordance with Applicable Law or Regulation and their customary document retention policies. Customer hereby waives any right to object to the admissibility into evidence of such recordings or transcripts in any court, arbitration or other legal proceeding.

c. **Electronic Signature.** Customer consents and agrees that Customer's use of a key pad, mouse or other device to select an item, button, icon or any such similar act while utilizing any electronic service provided, including the Electronic Order Entry System, or in accessing or making any transaction regarding any agreement, acknowledgment, consent, term, disclosure or condition constitutes Customer's signature, acceptance and agreement, as if actually signed by Customer in writing. Customer further agrees that no certification authority or other third party verification is necessary in determining the enforceability of such signature or any resulting Commodity Interest contract between Customer and E*TRADE Clearing.

d. **Entire Agreement.** This Agreement embodies the entire agreement between the parties with respect to the subject matter hereof and supersedes all prior oral or written representations, agreements, promises, or other communications relating to the covered subject matter.

e. **Amendment.** Customer understands that E*TRADE Clearing may amend any of the terms and conditions of this Agreement at any time. E*TRADE Clearing reserves the right, but is no obligation, to notify Customer of any such amendment. In the event E*TRADE Clearing notifies Customer of any amendment to this Agreement, Customer acknowledges that the normal method of notifying Customer is to post an updated Agreement on the Website. Customer agrees to regularly consult the Website for updates to this Agreement.

Continued on next page
8

(09.18.13) FUTURES ACCOUNT AGREEMENT

f.   **Severability and Waiver.** Every term and provision of this Agreement is intended to be severable. If any provision of this Agreement is held to be prohibited, invalid, void or unenforceable in any respect, including by reason of any law, rule, administrative order or judicial decision, that determination will not affect the validity of the remaining provisions of this Agreement. Except as specifically permitted in this Agreement, no provision hereof shall in any respect be waived, altered, augmented, modified or amended unless agreed to in writing and signed by an authorized officer of E*TRADE Clearing.

g.   **Assignment or Transfer.** Pursuant to Applicable Law or Regulation, E*TRADE Clearing may assign or transfer Customer's account at any time to any successor, permitted assign, or other FCM or similar entity without prior notice; provided, in the case of a bulk transfer of accounts pursuant to CFTC Regulation 1.65 or any other Applicable Law or Regulation, Customer receives written notice of the assignment or transfer and has a reasonable opportunity to object. Customer hereby consents to any such assignment or transfer.

h.   **Successors.** This Agreement will pass to the benefit of E*TRADE Clearing and its successors, assigns and agents. Customer hereby agrees that this Agreement and all the terms and conditions hereunder, will be binding on any heir, executor, administrator, personal representative of Customer or such other assign permitted by E*TRADE Clearing.

i.   **Governing Law and Consent to Jurisdiction.**

  i. This Agreement and the rights and liabilities of the parties shall, in all respects, be governed by and construed in accordance with laws of the State of New York, without regard to its conflict of law provisions.

  ii. With respect to any dispute, claim, suit, action or proceeding in connection with this Agreement, each party hereto: (i) irrevocably submits to the exclusive jurisdiction of the courts of the State of New York, the Courts of the United States or any arbitration forum located in the county, city and state of New York; (ii) waives any objection it may have at any time to the laying of venue of any proceeding and waives any claim that such proceeding has been brought in an inconvenient forum; and (iii) waives the right to object, with respect to such proceeding, that such court does not have jurisdiction over the party.

j.   Customer agrees that no dispute, claim, suit, action or proceeding arising directly, indirectly or otherwise in connection with this Agreement or the transactions in Customer's account may be initiated by Customer unless commenced within one (1) year from the date of the disputed transaction; provided, however, that any action brought under the provisions of Section 14 of the Commodity Exchange Act may be brought at any time within two (2) years after the cause of action accrues.

**Continued on next page**
9

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Antony Buchignani, Esq. (State Bar No. 186528)<br>Theodora Oringher PC<br>1840 Century Park East, Suite 500<br>Los Angeles, CA 90067-2120<br>TELEPHONE NO.: (310) 557-2009   FAX NO.: (310) 551-0283<br>ATTORNEY FOR *(Name):* Plaintiff CHARLES EVANS PATTERSON | **FILED**<br><br>2016 MAY 12  P 2 51<br><br>...DER H. NASH<br>...SUPERIOR COURT<br>COU... OF CONTRA COSTA<br>..................<br>DEPUTY CLERK |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF **CONTRA COSTA** |
|---|
| STREET ADDRESS: 725 Court Street |
| MAILING ADDRESS: 725 Court Street |
| CITY AND ZIP CODE: Martinez, CA 94553 |
| BRANCH NAME: |

| CASE NAME: Charles Evans Patterson, etc. v. E*Trade Clearing, etc., et al. |
|---|

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: **C16-00931** |
|---|---|---|
| ☒ Unlimited (Amount demanded exceeds $25,000) ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter ☐ Joinder<br>Filed with first appearance by defendant *(Cal. Rules of Court, rule 3.402)* | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| ☐ Auto (22)<br>☐ Uninsured motorist (46) | ☒ Breach of contract/warranty (06)<br>☐ Rule 3.740 collections (09)<br>☐ Other collections (09)<br>☐ Insurance coverage (18)<br>☐ Other contract (37) | *(Cal. Rules of Court, rules 3.400–3.403)*<br>☐ Antitrust/Trade regulation (03)<br>☐ Construction defect (10)<br>☐ Mass tort (40)<br>☐ Securities litigation (28)<br>☐ Environmental/Toxic tort (30) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**<br>☐ Asbestos (04)<br>☐ Product liability (24)<br>☐ Medical malpractice (45)<br>☐ Other PI/PD/WD (23) | **Real Property**<br>☐ Eminent domain/Inverse condemnation (14)<br>☐ Wrongful eviction (33)<br>☐ Other real property (26) | ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)<br>**Enforcement of Judgment**<br>☐ Enforcement of judgment (20) |
| **Non-PI/PD/WD (Other) Tort**<br>☐ Business tort/unfair business practice (07)<br>☐ Civil rights (08)<br>☐ Defamation (13)<br>☐ Fraud (16)<br>☐ Intellectual property (19)<br>☐ Professional negligence (25)<br>☐ Other non-PI/PD/WD tort (35) | **Unlawful Detainer**<br>☐ Commercial (31)<br>☐ Residential (32)<br>☐ Drugs (38)<br>**Judicial Review**<br>☐ Asset forfeiture (05)<br>☐ Petition re: arbitration award (11)<br>☐ Writ of mandate (02) | **Miscellaneous Civil Complaint**<br>☐ RICO (27)<br>☐ Other complaint *(not specified above)* (42)<br>**Miscellaneous Civil Petition**<br>☐ Partnership and corporate governance (21)<br>☐ Other petition *(not specified above)* (43) |
| **Employment**<br>☐ Wrongful termination (36)<br>☐ Other employment (15) | ☐ Other judicial review (39) | |

2. This case ☐ is ☒ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. ☒ monetary  b. ☐ nonmonetary; declaratory or injunctive relief  c. ☐ punitive
4. Number of causes of action *(specify):* 5
5. This case ☐ is ☒ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: May 12, 2016

Antony Buchignani
_____
(TYPE OR PRINT NAME)          ▶         (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |
|---|---|---|

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
Damage/Wrongful Death
Uninsured Motorist (46) (*if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto*)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/
Wrongful Death
Product Liability (*not asbestos or toxic/environmental*) (24)
Medical Malpractice (45)
Medical Malpractice–
Physicians & Surgeons
Other Professional Health Care
Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip and fall)
Intentional Bodily Injury/PD/WD
(e.g., assault, vandalism)
Intentional Infliction of
Emotional Distress
Negligent Infliction of
Emotional Distress
Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
Practice (07)
Civil Rights (e.g., discrimination,
false arrest) (*not civil harassment*) (08)
Defamation (e.g., slander, libel)
(13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice
(*not medical or legal*)
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36) Other
Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease
Contract (*not unlawful detainer or wrongful eviction*)
Contract/Warranty Breach–Seller
Plaintiff (*not fraud or negligence*)
Negligent Breach of Contract/
Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open
book accounts) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections
Case
Insurance Coverage (*not provisionally complex*) (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property (*not eminent domain, landlord/tenant, or foreclosure*)

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential*)

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court
Case Matter
Writ–Other Limited Court Case
Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor
Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
(*arising from provisionally complex case type listed above*) (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of
County)
Confession of Judgment (*non-domestic relations*)
Sister State Judgment
Administrative Agency Award
(*not unpaid taxes*)
Petition/Certification of Entry of
Judgment on Unpaid Taxes
Other Enforcement of Judgment
Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified above*) (42)
Declaratory Relief Only
Injunctive Relief Only (*non-harassment*)
Mechanics Lien
Other Commercial Complaint
Case (*non-tort/non-complex*)
Other Civil Complaint
(*non-tort/non-complex*)

**Miscellaneous Civil Petition**
Partnership and Corporate
Governance (21)
Other Petition (*not specified above*) (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult
Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late
Claim
Other Civil Petition

**CIVIL CASE COVER SHEET**

American LegalNet, Inc.
www.FormsWorkflow.com

SUPERIOR COURT - MARTINEZ
COUNTY OF CONTRA COSTA
MARTINEZ, CA, 94553

PATTERSON VS. E*TRADE

NOTICE OF CASE MANAGEMENT CONFERENCE                CIVMSC16-00931

1.  NOTICE: THE CASE MANAGEMENT CONFERENCE HAS BEEN SCHEDULED FOR:

DATE:  09/29/16       DEPT:  09       TIME:   9:00

THIS FORM, A COPY OF THE NOTICE TO PLAINTIFFS, THE ADR INFORMATION
SHEET, A BLANK CASE MANAGEMENT CONFERENCE QUESTIONNAIRE, AND A BLANK
STIPULATION FORM ARE TO BE SERVED ON OPPOSING PARTIES.  ALL PARTIES
SERVED WITH SUMMONS AND COMPLAINT/CROSS-COMPLAINT OR THEIR ATTORNEY
OF RECORD MUST APPEAR.

2.  You may stipulate to an earlier Case Management Conference.  If
all parties agree to an early Case Management Conference, please
contact the Court Clerk's Office at (925)646-4099 for Unlimited Civil
and Limited Civil cases for assignment of an earlier date.

3.  You must be familiar with the case and be fully prepared to par-
ticipate effectively in the Case Management Conference and to discuss
the suitability of this case for the EASE Program, private mediation,
binding or non-binding arbitration, and/or use of a Special Master.

4.  At any Case Management Conference the court may make pretrial
orders including the following:

    a.  an order establishing a discovery schedule
    b.  an order referring the case to arbitration
    c.  an order transferring the case to limited jurisdiction
    d.  an order dismissing fictitious defendants
    e.  an order scheduling exchange of expert witness information
    f.  an order setting subsequent conference and the trial date
    g.  an order consolidating cases
    h.  an order severing trial of cross-complaints or bifurcating
        issues
    i.  an order determining when demurrers and motions will be filed

                            SANCTIONS
If you do not file the Case Management Conference Questionnaire or
attend the Case Management Conference or participate effectively in
the Conference, the court may impose sanctions (including dismissal of
the case and payment of money).

        Clerk of the Superior Court of Contra Costa County
I declare under penalty of perjury that I am not a party to this
action, and that I delivered or mailed a copy of this notice to the
person representing the plaintiff/cross-complainant.

Dated:  05/12/16

                                 D. WEBER
                                 Deputy Clerk of the Court

**Superior Court of California, County of Contra Costa**

## NOTICE TO PLAINTIFFS
In Unlimited Jurisdiction Civil Actions

### AFTER YOU FILE YOUR COURT CASE:

1. **Have the forms the clerk gives you served on all defendants in this case:**
   a. The Complaint
   b. The Summons
   c. The Notice of Case Management Conference (shows hearing date and time)
   d. The Notice to Defendants  (Local Court Form CV-655d)
   e. Blank: Case Management Statement (Judicial Council Form CM-110)
   f. Blank: Stipulation and Order to Attend ADR and Delay First Case Management Conference 90 Days (Local Court Form CV-655b)
   g. Alternative Dispute Resolution (ADR) Information (Local Court Form CV-655c)

2. Within 60 days of the date you filed the complaint **you must prove that the forms have been served on (delivered to) the defendants correctly** by filing the ***Proof of Service*** form (POS-010) (completed by the person who did the service) with the court.

3. **Go to the case management conference on the date indicated on** The Notice of Case Management Conference.

4. **Consider using mediation, arbitration, or neutral case evaluation (ADR) to resolve the dispute.** All parties must answer questions about ADR on the *Case Management Statement* form. For more information, see the enclosed ADR information, visit *www.cc-courts.org/adr* , or call (925) 957-5787.

5. **You may delay the first case management conference while you try to resolve the dispute in ADR.** If all parties agree to use ADR, complete and file the Stipulation and Order to Attend ADR and Continue First Case Management Conference 90 Days form to tell the court you want to use this option.

All civil actions *(except juvenile, probate, family, unlawful detainer, extraordinary writ, and asset forfeiture[1])* and personal injury cases where a party is claiming damages[2] must meet the Civil Trial Delay Reduction time limits for filing documents and moving their cases forward. These time limits are listed in California Rule of Court 3.110 and Local Court Rule 5. If parties miss these deadlines, a judge might issue an order (*Order to Show Cause*) for them to explain in court why they should not have to pay a fine or have their case dismissed.

### VIEW LOCAL COURT RULES AT: (WWW.CC-COURTS.ORG/RULES)

---

[1] *Health and Safety Code §11470 et seq.*
[2] *Including claims for emotional distress and/or wrongful death.*

Local Court Form – Instructions
CV-655a/Rev. 07/25/2007
Packet Revised 7/1/2011

**Superior Court of California, County of Contra Costa**

## NOTICE TO DEFENDANTS
In <u>Unlimited Jurisdiction</u> Civil Actions

<u>YOU ARE BEING SUED</u>. The packet you have been served should contain:

a. The Summons

b. The Complaint

c. The Notice of Case Management (shows hearing date and time)

d. <u>Blank</u>: Case Management Statement (Judicial Council Form CM-110)

e. <u>Blank</u>: Stipulation and Order to Attend ADR and Delay First Case Management Conference 90 Days (Local Court Form CV-655b)

f. Alternative Dispute Resolution (ADR) Information  (Local Court Form CV-655c)

---

 **WHAT DO I DO NOW?** 

<u>You must:</u>

1. **Prepare your response**    YOU COULD LOSE YOUR CASE—even before it is heard by a judge or before you can defend yourself, if you do not prepare and file a response on time. See the other side of this page for types of responses you can prepare.

2. **Complete the** *Case Management Statement  (CM-110)*

3. **File and serve your court papers on time**    Once your court forms are complete, you <u>must</u> file 1 original and 2 copies of the forms at court. An adult who is NOT involved in your case must serve one set of forms on the Plaintiff. If you were served in person you must file your response in 30 days. If the server left a copy of the papers with an adult living at your home or an adult in charge at your work or you received a copy by mail you must file your response in 40 days.

4. **Prove you served your court papers on time**    by having your server complete a *Proof of Service, (Judicial Council form POS-040)*, that <u>must</u> be filed at the court within <u>60</u> days.

5. **Go to court** on the date and time given in the *Notice of Case Management Conference*.

6. **Consider trying to settle your case before trial**    If you and the other party to the case can agree to use mediation, arbitration or neutral case evaluation, the *Stipulation and Order to Attend ADR and Delay First Case Management Conference 90 Days* can be filed with your other papers. For more information read the enclosed ADR information, visit www.cc-courts.org/adr, or call (925) 957-5787.

**IMPORTANT! The court recommends consulting an attorney for all or part of your case. While you may represent yourself, lawsuits can be complicated, and the court cannot give you legal advice.**

---

<u>COURT FEES:</u> You must pay court fees the first time you file your papers. If you also file a motion, you must pay another fee. If you cannot afford the fees, you may ask the court to waive (allow you not to pay) fees. Use Judicial Council forms FW-001-INFO [information sheet]; FW-001 [application]; and FW-003 [order].

<u>COURT FORMS:</u> Buy forms at the Forms Window in the Family Law Building or download them for free at: www.courtinfo.ca.gov/forms/

# SUPERIOR COURT OF THE STATE OF CALIFORNIA
# IN AND FOR THE COUNTY OF CONTRA COSTA

_____

_____
Plaintiff(s) / Cross Plaintiff(s)

vs.

**_ADR Case Management Stipulation and Order_**
**_(Unlimited Jurisdiction Civil Cases)_**

_____

_____
Defendant(s) / Cross Defendant(s)

CASE NO: _____

---

► ALL PARTIES STIPULATING TO ADR AND DELAYING THEIR CASE MANAGEMENT CONFERENCE 90 DAYS MUST **SUBMIT THE ORDER FOR THE JUDGE'S SIGNATURE AND FILE THIS FORM AT LEAST 15 DAYS BEFORE THEIR CASE MANAGEMENT CONFERENCE.** (NOT AVAILABLE IN COMPLEX LITIGATION CASES.)

► PARTIES MUST ALSO SEND A COPY OF THIS FILED STIPULATION AND ORDER TO THE ADR OFFICE: FAX: (925) 957-5689 MAIL: P.O. BOX 911, MARTINEZ, CA 94553

---

**Counsel and all parties agree to delay their case management conference 90 days to attend ADR and complete pre-ADR discovery as follows:**

1. Selection and scheduling for Alternative Dispute Resolution (ADR):
   a. The parties have agreed to ADR as follows:
      i. ☐ Mediation  (☐ Court-connected ☐ Private)
      ii. ☐ Arbitration  (☐ Judicial Arbitration (non-binding)   ☐ Private (non-binding)   ☐ Private (binding))
      iii. ☐ Neutral case evaluation
   b. The ADR neutral shall be selected by *(date):* _____ *(no more than 14 days after filing this form)*
   c. ADR shall be completed by *(date):* _____ *(no more than 90 days after filing this form)*
2. The parties will complete the following discovery plan:
   a. ☐ Written discovery:  (☐ Additional page(s) attached)
      i. ☐ Interrogatories to:
      ii. ☐ Request for Production of Documents to:
      iii. ☐ Request for Admissions to:
      iv. ☐ Independent Medical Evaluation of:
      v. ☐ Other:
   b. ☐ Deposition of the following parties or witnesses: (☐ Additional page(s) attached)
      i. _____
      ii. _____
      iii. _____
   c. ☐ No Pre-ADR discovery needed
3. The parties also agree: _____
4. Counsel and self-represented parties represent they are familiar with and will fully comply with all local court rules related to ADR as provided in Appendix C, will pay the fees associated with these services, and understand that if they do not, without good cause, comply with this stipulation and all relevant local court rules, they may be subject to sanctions.

| Counsel for Plaintiff *(print)* | Fax | Counsel for Defendant *(print)* | Fax |
|---|---|---|---|
| Signature | | Signature | |
| Counsel for Plaintiff *(print)* | Fax | Counsel for Defendant *(print)* | Fax |
| Signature | | Signature | |

---

Pursuant to the Stipulation of the parties, and subject to the *Case Management Order* to be filed, **IT IS SO ORDERED** that the Case Management Conference set for _____ is vacated and rescheduled for _____ at (8:30 a.m. / _____ ) **Plaintiff / Plaintiff's counsel must notify all parties of the new case management conference.**

Dated: _____

**Judge of the Superior Court**

---

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

TELEPHONE NO.:                          FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF**
  STREET ADDRESS:
  MAILING ADDRESS:
  CITY AND ZIP CODE:
  BRANCH NAME:

  PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| **CASE MANAGEMENT STATEMENT** | | CASE NUMBER: |
|---|---|---|
| *(Check one):* ☐ **UNLIMITED CASE** (Amount demanded exceeds $25,000) | ☐ **LIMITED CASE** (Amount demanded is $25,000 or less) | |

A CASE MANAGEMENT CONFERENCE is scheduled as follows:
Date:                          Time:                Dept.:            Div.:            Room:
Address of court *(if different from the address above):*

☐ Notice of Intent to Appear by Telephone, by *(name):*

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one):*
   a. ☐ This statement is submitted by party *(name):*
   b. ☐ This statement is submitted jointly by parties *(names):*

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. The complaint was filed on *(date):*
   b. ☐ The cross-complaint, if any, was filed on *(date):*

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐ All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
   b. ☐ The following parties named in the complaint or cross-complaint
      (1) ☐ have not been served *(specify names and explain why not):*

      (2) ☐ have been served but have not appeared and have not been dismissed *(specify names):*

      (3) ☐ have had a default entered against them *(specify names):*

   c. ☐ The following additional parties may be added *(specify names, nature of involvement in case, and date by which they may be served):*

4. **Description of case**
   a. Type of case in ☐ complaint ☐ cross-complaint *(Describe, including causes of action):*

**CASE MANAGEMENT STATEMENT**

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

10. c. Indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in (check all that apply and provide the specified information):

| | The party or parties completing this form **are willing to** participate in the following ADR processes (check all that apply): | If the party or parties completing this form in the case **have agreed to** participate in or have already completed an ADR process or processes, indicate the status of the processes (attach a copy of the parties' ADR stipulation): |
|---|---|---|
| (1) Mediation | ☐ | ☐ Mediation session not yet scheduled<br>☐ Mediation session scheduled for (date):<br>☐ Agreed to complete mediation by (date):<br>☐ Mediation completed on (date): |
| (2) Settlement conference | ☐ | ☐ Settlement conference not yet scheduled<br>☐ Settlement conference scheduled for (date):<br>☐ Agreed to complete settlement conference by (date):<br>☐ Settlement conference completed on (date): |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled<br>☐ Neutral evaluation scheduled for (date):<br>☐ Agreed to complete neutral evaluation by (date):<br>☐ Neutral evaluation completed on (date): |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled<br>☐ Judicial arbitration scheduled for (date):<br>☐ Agreed to complete judicial arbitration by (date):<br>☐ Judicial arbitration completed on (date): |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled<br>☐ Private arbitration scheduled for (date):<br>☐ Agreed to complete private arbitration by (date):<br>☐ Private arbitration completed on (date): |
| (6) Other (specify): | ☐ | ☐ ADR session not yet scheduled<br>☐ ADR session scheduled for (date):<br>☐ Agreed to complete ADR session by (date):<br>☐ ADR completed on (date): |

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**17. Economic litigation**

   a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

   b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

**18. Other issues**

   ☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*

**19. Meet and confer**

   a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*

   b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

**20. Total number of pages attached** *(if any):* _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached.



## CONTRA COSTA COUNTY SUPERIOR COURT
## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION

All judges in the Civil Trial Delay Reduction Program agree that parties should consider using Alternative Dispute Resolution (ADR) to settle their cases. To tell the court you will use ADR:

- Choose ADR on the *Case Management Form (CM-110)*;
- File a *Stipulation and Order to Attend ADR and Continue First Case Management Conference 90-Days* (local court form); or
- Agree to ADR at your first court appearance.

*Questions? Call (925) 957-5787, or go to www.cc-courts.org/adr*

## MEDIATION
Mediation is often faster and less expensive than going to trial. Mediators help people who have a dispute talk about ways they can settle their case. Parties call or visit the ADR Programs office to get a list of mediators. After parties have agreed on a mediator, they must write a summary (5 pages or less) explaining the facts, legal arguments, and legal authority for their position. They must send this summary to the other parties and the mediator at least 5 court days before mediation starts.

ALL parties and attorneys must go to mediation. Mediation can be held whenever and wherever the parties and the mediator want, as long as they finish before the court deadline. In some kinds of court cases, parties have the chance to mediate in the courthouse on their trial day.

Most mediators begin by talking with the parties together, helping them focus on the important issues. The mediator may also meet with each party alone. Mediators often ask parties for their ideas about how to settle the case. Some mediators tell the parties how much money they think a case is worth, or tell them what they think might happen if the case went to trial. Other mediators help the parties decide these things for themselves. No matter what approach a mediator takes, decisions about settling a case can only be made when all the parties agree.

If the parties go through the court ADR program, mediators do not charge fees for the first half hour spent scheduling or preparing for mediation. They also do not charge fees for the first two hours of mediation. If parties need more time, they must pay that person's regular fees. Some mediators ask for a deposit before mediation starts. Mediators who do this must give back whatever is left after counting the time he or she spent preparing for or doing the mediation. A party whose court fees have been waived (cancelled) may ask if their mediation fees or deposit can be waived.

If parties agree about how they will settle their case, they can choose to keep it private, write it up as a contract, or ask the judge to make it a court order. What parties say and agree to in mediation is confidential (private).

## PRIVATE MEDIATION
Private mediation works in the same way as judicial mediation, but the parties do not go through the ADR Programs office. Parties choose a mediator on their own, and pay the mediator's normal fees.

## TEMPORARY JUDGE

Some parties want a trial, but want to choose who will decide the case and when the trial will take place. Parties can agree on an attorney that they want the court to appoint as a temporary judge for their case. (See Article 6, Section 21 of the State Constitution and Rule 2.830 of the California Rules of Court.) Temporary judges have nearly the same authority as a superior court judge to conduct a trial and make decisions. As long as the parties meet the court deadline, they can schedule the trial at their own and the temporary judge's convenience.

Each of the temporary judges on the court's panel has agreed to serve at no charge for up to 5 court days. If the parties need more time, they must pay that person's regular fees. All parties and their lawyers must attend the trial, and provide a copy of all briefs or other court documents to the temporary judge at least two weeks before the trial. These trials are similar to other civil trials, but are usually held outside the court. The temporary judge's decision can be appealed to the superior court. There is no option for a jury trial. The parties must provide their own court reporter.

## SPECIAL MASTER

A special master is a private lawyer, retired judge, or other expert appointed by the court to help make day-to-day decisions in a court case. The special master's role can vary, but often includes making decisions that help the discovery (information exchange) process go more smoothly. He or she can make decisions about the facts in the case. Special masters can be especially helpful in complex cases. The trial judge defines what the special master can and cannot do in a court order.

Special masters often issue both interim recommendations and a final report to the parties and the court. If a party objects to what the special master decides or reports to the court, that party can ask the judge to review the matter. In general, the parties choose (by stipulation) whom they want the court to appoint as the special master, but there are times (see California Code of Civil Procedure Section 639), when the court may appoint a special master or referee without the parties' agreement. The parties are responsible to pay the special master's regular fees.

## COMMUNITY MEDIATION SERVICES

Mediation Services are available through non-profit community organizations. These low-cost services are provided by trained volunteer mediators. For more information about these programs contact the ADR Program at (925) 957-5787

# EXHIBIT B

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

## FORM 10-K

*(Mark One)*

☒   **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**
### For the fiscal year ended December 31, 2015
### or

☐   **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**
**For the transition period from          to          .**

### Commission File Number 1-11921

# E*TRADE Financial Corporation
### (Exact Name of Registrant as Specified in its Charter)

|  |  |
|---|---|
| **Delaware** | **94-2844166** |
| **(State or other jurisdiction** | **(I.R.S. Employer** |
| **of incorporation or organization)** | **Identification Number)** |

**1271 Avenue of the Americas, 14th Floor, New York, New York 10020**
**(Address of principal executive offices and Zip Code)**
**(646) 521-4300**
**(Registrant's telephone number, including area code)**
**Securities Registered Pursuant to Section 12(b) of the act:**

| Title of Each Class | Name of Each Exchange on Which Registered |
|---|---|
| Common Stock, par value $0.01 per share | The NASDAQ Stock Market LLC |
|  | NASDAQ Global Select Market |

**Securities Registered Pursuant to Section 12(g) of the Act: None**

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act.   Yes ☒  No ☐

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act.   Yes ☐  No ☒

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports) and (2) has been subject to such filing requirements for the past 90 days.   Yes ☒  No ☐

Indicate by check mark whether the registrant has submitted electronically and posted on its corporate Website, if any, every Interactive Data File required to be submitted and posted pursuant to Rule 405 of Regulation S-T during the preceding 12 months (or for such shorter period that the registrant was required to submit and post such files).   Yes ☒  No ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendments to this Form 10-K.   ☒

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer or a smaller reporting company. See definitions of "large accelerated filer," "accelerated filer" and "smaller reporting company" in Rule 12b-2 of the Exchange Act.

| | | | |
|---|---|---|---|
| Large accelerated filer ☒ | | Accelerated filer | ☐ |
| Non-accelerated filer ☐ (Do not check if a smaller reporting company) | | Smaller reporting company | ☐ |

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act).   Yes ☐  No ☒

At June 30, 2015, the aggregate market value of voting stock held by non-affiliates of the registrant was approximately $6.1 billion (based upon the closing price per share of the registrant's common stock as reported by the NASDAQ Global Select Market on that date). Shares of common stock held by each officer, director and holder of 5% or more of the outstanding

common stock have been excluded in that such persons may be deemed to be affiliates. This determination of affiliates' status is not necessarily a conclusive determination for other purposes.

Indicate the number of shares outstanding of each of the issuer's classes of common stock, as of the latest practicable date:

As of February 19, 2016, there were 282,708,675 shares of common stock outstanding.

Documents Incorporated by Reference: Certain portions of the definitive Proxy Statement related to the Company's 2016 Annual Meeting of Stockholders, to be filed hereafter (incorporated into Part III hereof).

Case 4:16-cv-03388-DMR   Document 1-1   Filed 06/17/16   Page 58 of 60

EX-21.1 5 etfc-20151231xex211.htm EXHIBIT 21.1

**Exhibit 21.1**

**E*TRADE Financial Corporation**

**Subsidiaries of Registrant**

| Company | Jurisdiction Name |
|---|---|
| Capitol View LLC | Delaware |
| E*TRADE Bank | Federal Charter |
| E*TRADE Capital Management, LLC | Delaware |
| E*TRADE Capital Trust XXVII | Delaware |
| E*TRADE Capital Trust XXVIII | Delaware |
| E*TRADE Capital Trust XXIX | Delaware |
| E*TRADE Clearing LLC | Delaware |
| E*TRADE Community Development Corporation | Delaware |
| E*TRADE Europe Holdings B.V. | The Netherlands |
| E*TRADE Financial Corporate Services, Inc. | Delaware |
| E*TRADE Financial Corporation Capital Trust V | Delaware |
| E*TRADE Financial Corporation Capital Trust VI | Delaware |
| E*TRADE Financial Corporation Capital Trust VII | Delaware |
| E*TRADE Financial Corporation Capital Statutory Trust VIII | Delaware |
| E*TRADE Financial Corporation Capital Statutory Trust IX | Delaware |
| E*TRADE Financial Corporation Capital Trust X | Delaware |
| E*TRADE Information Services, LLC | Delaware |
| ETCM Holdings, LLC | Delaware |
| E*TRADE Insurance Services, Inc. | California |
| E*TRADE Master Trust | Delaware |
| E*TRADE Savings Bank | Federal Charter |
| E*TRADE Philippines Holdings Corporation | Philippines |
| E*TRADE Securities Limited | United Kingdom |
| E*TRADE Securities LLC | Delaware |
| E*TRADE UK (Holdings) Limited | United Kingdom |
| E*TRADE UK Nominees Limited | United Kingdom |
| ETB Capital Trust XI | Delaware |
| ETB Capital Trust XII | Delaware |
| ETB Capital Trust XIII | Delaware |
| ETB Capital Trust XIV | Delaware |
| ETB Capital Trust XV | Delaware |
| ETB Capital Trust XVI | Delaware |
| ETB Capital Trust XXV | Delaware |
| ETB Capital Trust XXVI | Delaware |
| ETB Holdings, Inc. | Delaware |
| ETB Holdings, Inc. Statutory Trust XXII | Delaware |
| ETB Holdings, Inc. Statutory Trust XXIII | Delaware |
| ETB Holdings, Inc. Capital Trust XVII | Delaware |

Case 4:16-cv-03388-DMR   Document 1-1   Filed 06/17/16   Page 59 of 60

| | |
|---|---|
| ETB Holdings, Inc. Capital Trust XVIII | Delaware |
| ETB Holdings, Inc. Capital Trust XIX | Delaware |
| ETB Holdings, Inc. Capital Trust XX | Delaware |

| | |
|---|---|
| ETB Holdings, Inc. Capital Trust XXI | Delaware |
| ETB Holdings, Inc. Capital Trust XXIV | Delaware |
| ETCF Asset Funding Corporation | Nevada |
| ETFC Capital Trust I | Delaware |
| ETFC Capital Trust II | Delaware |
| ETRADE Securities (Hong Kong) Limited | Hong Kong |
| TIR (Holdings) Limited | Cayman Islands |
| ET Canada Holdings Inc. | Canada |