THEODORA ORINGHER PC
Antony Buchignani, Esq. (State Bar No. 186528)
1840 Century Park East, Suite 500
Los Angeles, California  90067-2120
Telephone: (310) 557-2009 Facsimile: (310) 551-0283

Chip Patterson (State Bar No. 231854)
1640 School Street
Moraga, CA 94556
Telephone:  (925) 631-9100 Facsimile:  (925) 235-1096

Attorneys for Plaintiff
CHARLES EVANS PATTERSON

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES EVANS PATTERSON, an individual, <br><br> Plaintiff, <br><br> vs. <br><br> E*TRADE Clearing, a Delaware Limited Liability Company, and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No. 4:16-CV-03388-DMR <br><br> **OPPOSITION OF PLAINTIFF CHARLES EVANS PATTERSON TO E*TRADE CLEARING'S MOTION TO DISMISS CLAIMS TWO AND THREE OF THE FIRST AMENDED COMPLAINT** <br><br> Judge:  The Hon. Donna M. Ryu <br> Date:    August 11, 2016 <br> Time:    11:00 a.m. <br> Dept.:   Courtroom 4, 3rd Floor <br><br> Removal Filed: June 17, 2016 <br> State Ct. Action Filed:  May 12, 2016 |

THEODORA ORINGHER
COUNSELORS AT LAW

1    Charles Evans Patterson ("Plaintiff") submits the following Memorandum of Points and
2    Authorities in Opposition to the Motion to Dismiss ("Motion") claims two and three of Plaintiff's First
3    Amended Complaint (ECF No. 1-1 at 5-43) ("FAC") filed by Defendants E*TRADE Clearing
4    ("Defendant").

5    **I.     INTRODUCTION**

6         Despite Defendant's assertions to the contrary, the Futures Account Agreement
7    between the parties did not give Defendant the "sole discretion to liquidate all or part of
8    Plaintiff's positions and/or account through any means available, without prior notice to
9    Plaintiff." *See* Opposition at 1:5-7.  To the contrary, the agreement expressly (and impliedly)
10   provides that, "[m]arket conditions permitting, [Defendant] agrees to make reasonable efforts
11   to notify [Plaintiff] of any margin call or deficiency and allow [Plaintiff] a reasonable period
12   of time to cure any margin deficiency."  FAC, Exh. A, §7(b)(i) (ECF No. 1-1 at 19).  In a
13   blatant breach of this provision, Defendant liquidated Plaintiff's futures account without
14   giving him notice or an opportunity to cure the purported margin deficiency even though
15   market conditions permitted such notice.

16        As set forth below, in addition to Plaintiff's other claims, the FAC alleges that a
17   <u>specific</u> (not just a general) fiduciary duty existed related to Defendant's handling of
18   Plaintiff's account (in particular the circumstances, and manner in which, Defendant could
19   liquidate the account).  Furthermore, the FAC alleges that Defendant had an implied duty of
20   good faith and fair dealing, which precluded it from depriving Plaintiff of his contractual
21   rights.  The FAC alleges that Defendant breached these duties when it liquidated the account
22   without providing him with meaningful notice or a reasonable opportunity to cure the alleged
23   margin deficiency.  Because the FAC properly alleges both a breach of fiduciary duty claim
24   and a breach of implied covenant claim against Defendant, the Court should deny the Motion
25   in its entirety.

26   **II.     THE PERTINENT FACTUAL ALLEGATIONS OF THE FAC**

27        This action involves a futures account that Plaintiff has maintained with Defendant for
28   approximately the past three years.  FAC, ¶7.   Prior to moving his futures business to

1    Defendant, Plaintiff  spoke on the phone with a representative of Defendant.  *Id.*, ¶8.  During

2    that call, Plaintiff explained that he had previously lost funds when another broker liquidated

3    his futures position to cover alleged margin requirements without first giving him an

4    opportunity to deposit additional funds.  *Id.*  As a result, Plaintiff sought confirmation from

5    Defendant's representative that he would receive prior notification if such a situation were

6    ever to occur in a futures account maintained with Defendant.  *Id.*  Defendant's representative

7    unequivocally confirmed that Defendant would provide such notice, and an opportunity to

8    deposit funds to satisfy margin requirements, prior to ever liquidating one of Plaintiff's

9    positions.  *Id.*

10          Consistent with Plaintiff's conversation with Defendant's representative, the Futures

11   Account Agreement between Plaintiff and Defendant provides that:

12          Market conditions permitting, [Defendant] agrees to make reasonable efforts

13          to notify [Plaintiff] of any margin call or deficiency and allow [Plaintiff] a

14          reasonable period of time to cure any margin deficiency.

15   Exh. A to FAC (ECF No. 1-1 at 34-43) (the "Agreement", §7(b)(i).  Based on the assurances

16   of Defendant's representative, and the plain language of the Agreement, Plaintiff entered into

17   the Agreement with Defendant in 2014, and moved his futures business to Defendant,

18   including establishing an account with Defendant ("Account").  FAC, ¶10.  Plaintiff used the

19   Account for a variety of transactions during the past years, and Defendant has recognized fees

20   from his business.  The equity in the Account and in Plaintiff's other accounts with Defendant

21   amounted to millions of dollars.  *Id.*, ¶11.

22          At some time in the early morning of February 11, 2016, Defendant liquidated the sole

23   position in the Account, which wiped out the majority of Plaintiff's equity.  As a direct result

24   of Defendant's unilateral liquidation of the Plaintiff's position, Plaintiff lost in excess of

25   $400,000 in equity in his Account. *Id.*, ¶12.  Defendant justified this liquidation as allegedly

26   being required to meet certain margin requirements – the exact scenario Plaintiff was assured

27   would not occur without prior notice to him.  *Id., ¶*13.  Yet, at no time prior to the liquidation

28   did Defendant notify Plaintiff as promised so that he could provide additional cash to cover

1   the margin requirements. *Id.* Indeed, Plaintiff is informed and believes that, as of 1:35am

2   PST on February 11, 2016 (prior to the liquidation), the equity in his account exceeded

3   Defendant's margin requirements by tens of thousands of dollars. *Id.* As of that time,

4   Defendant had made no requests of Plaintiff for additional margin, or notified him of any

5   concerns with the amount of equity in the Account. *Id.*

6         Plaintiff believes that such notice to him on February 11, 2016 was feasible, and market

7   conditions permitted such notice. *Id.*, ¶14. Indeed, Defendant was in possession of both

8   Plaintiff's email and his cell phone numbers precisely so that he could be alerted to, and

9   address, any last minute Account requirements. *Id.* Although Plaintiff did receive an email

10   from Defendant on February 11, 2016 at 1:38am PST, that email gave Plaintiff absolutely no

11   reason to believe that Defendant planned to liquidate the position in the Account, or otherwise

12   inform Plaintiff that any additional margin in the Account was required. *Id.*, ¶15.

13   **III.**     **THE FAC ALLEGES THAT DEFENDANT BREACHED ITS SPECIFIC**

14           **FIDUCIARY DUTY TO PLAINTIFF**

15     Under New York law,[1] the elements of a breach of fiduciary duty claim are:

16   (1) existence of a fiduciary duty; and (2) breach of the fiduciary duty. *In re NYSE Specialists*

17   *Sec. Litig.*, 405 F. Supp. 2d 281, 302 (S.D.N.Y. 2005). A fiduciary relationship "exists only

18   when a person reposes a high level of confidence and reliance in another." *People ex rel.*

19   *Cuomo v. Coventry First LLC*, 13 N.Y.3d 108, 115 (2009); *Teachers Ins. & Annuity Ass'n of*

20   *Am. v. Wometco Ent., Inc.*, 833 F. Supp. 344, 349-50 (S.D.N.Y.1993) (a fiduciary relationship

21   exists when "one person has reposed trust or confidence in the integrity and fidelity of another

22   who thereby gains a resulting superiority or influence over the first.") However, a fiduciary

23   duty "cannot be determined 'by recourse to rigid formulas;' rather, 'New York courts typically

24   focus on whether one person has reposed trust or confidence in another who thereby gains a

25   ───────────────────

26       [1] For purposes of this Motion only, Plaintiff will accept Defendant's application of New

27   York law. However, Plaintiff reserves the right to later challenge the contractual choice of
law provision in the Agreement, and argue that California law should apply.

28

THEODORA ORINGHER
COUNSELORS AT LAW

resulting superiority or influence over the first.'" *Lehman Bros. Commer. Corp. v. Minmetals Int'l Non-Ferrous Metals Trading Co.*, 179 F. Supp. 2d 118, 152 (S.D.N.Y. 2000) (*quoting Scott v. Dime Sav. Bank*, 886 F. Supp. 1073, 1078 (S.D.N.Y. 1995)); *Litton Industries, Inc. v. Lehman Bros. Kuhn Loeb Inc.*, 767 F. Supp. 1220, 1231 (S.D.N.Y.1991), *rev'd on other grounds*, 967 F.2d 742 (2d Cir.1992) (same).

With respect to broker/client relationships, it is well settled that "[u]nder New York law, brokers maintain fiduciary duties to their customers, and the relationship between the two parties is one of principal and agent by virtue of which a broker is subject to certain fiduciary obligations to the client." *Jaksich v. Thomson McKinnon Securities, Inc.*, 582 F. Supp. 485, 502 (S.D. N.Y. 1984). "A broker, as agent, has a duty to use reasonable efforts to give its principal information relevant to the affairs that have been entrusted to it." *Conway v. Icahn & Co.*, 16 F.3d 504, 510 (1994) (citing See Restatement (Second) of Agency § 381 (1958)). "Even where the broker does not have discretionary trading authority, the relationship between a broker and the customer is still one of principal and agent, creating a fiduciary duty with respect to the invested funds." *Conte v. US Alliance Fed. Credit Union*, 303 F. Supp. 2d 220, 229 (2004) (citations omitted). For instance, where a client maintains a non-discretionary brokerage account, "his authorization for all purchases and sales [is] required. Absent a waiver of notice running in its favor, [a broker has] a duty to notify [the client] prior to the execution of [a] sellout and to secure [the client's] consent as to the items to be sold." *Conway*, 16 F.3d at 510.

Here, Plaintiff's allegations establish that he "repose[d] a high level of confidence and reliance in [Defendant]," which creased a fiduciary relationship. *People ex rel. Cuomo*, 13 N.Y.3d at 115 (2009). The FAC alleges that Plaintiff agreed to move his futures business to Defendant based on assurances from Defendant's representative that he would receive notice and an opportunity to cure any alleged margin requirements prior to the liquidation of his account. FAC, ¶¶8-10. These assurances were consistent with the Agreement covering Plaintiff's account with Defendant, which provides "Market conditions permitting, E*TRADE Clearing agrees to make reasonable efforts to notify Customer of any margin call or deficiency

1    and allow Customer a reasonable period of time to cure any margin deficiency." Agreement,

2    Section 7(b)(i).  *Id.*, ¶9.  Thereafter, Plaintiff trusted Defendant with substantial funds that he

3    deposited into the account, which he used for a variety of transactions.  *Id.*, ¶¶11-12. These

4    allegations show that a specific fiduciary duty was created because Plaintiff "reposed trust or

5    confidence in the integrity and fidelity of [Defendant]."  *Teachers Ins. & Annuity Ass'n of*

6    *Am.*, 833 F. Supp. at 349-50.  After all, Defendant (as the custodian of the account) had

7    control over the account and the ability to liquidate any and all positions in the account, and

8    thereby substantially harm Plaintiff if Defendant improperly exercised its liquidation powers.

9    Having no physical ability to block such a liquidation, Plaintiff had to trust Defendant that it

10   would not do so without first providing the agreed notice and opportunity to cure.  Defendant

11   then breached that trust by unilaterally, and without notifying Plaintiff, liquidating the account

12   in the middle of the night on February 11, 2016, which cost Plaintiff in excess of $400,000 in

13   equity.  FAC, ¶12.  These allegations in the FAC state a claim for breach of fiduciary duty

14   under New York law.

15        Defendant's citations to *Fesseha v. TD Waterhouse Inv'r Servs., Inc.*, 761 N.Y.S.2d 22

16   (2003) and other cases reciting the general rule that a non-discretionary broker does not have a

17   <u>general</u> fiduciary duty to customers are misplaced.  Plaintiff does not base his breach of

18   fiduciary duty claim on a purported general duty arising out of the basic brokerage

19   relationship.  Rather, Defendant's fiduciary duty to Plaintiff arises out of the specific facts

20   alleged in the FAC and the language of the Agreement.  While Defendant may dispute these

21   facts, such a factual dispute cannot be resolved by motion at the pleading stage.  *See Roni LLC*

22   *v. Arfa*,18 N.Y.3d 846, 848, 939 N.Y.S.2d 746, 748 (2011) ("Ascertaining the existence of a

23   fiduciary relationship inevitably requires a fact-specific inquiry.") (internal quotation marks

24   omitted); *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1950 (2009) (in ruling on a motion

25   to dismiss, the Supreme Court stated that "we identify well-pleaded factual allegations, which

26   we assume to be true, and then determine whether they plausibly give rise to an entitlement to

27   relief.")

28        Defendant's argument that the Agreement somehow precludes a breach of fiduciary

THEODORA ORINGHER
COUNSELORS AT LAW

1   duty claim is also misplaced.  Indeed, the Agreement supports Plaintiff's claim for breach of

2   fiduciary duty because it confirms that Defendant must "make reasonable efforts to notify

3   [Plaintiff] of any margin call or deficiency and allow [Plaintiff] a reasonable period of time to

4   cure any margin deficiency."  Agreement, Section 7(b)(i).  Id., ¶9.  This is not a case like *Pane*

5   *v. Citibank, N.A.,* 797 N.Y.S.2d 76, 77 (2005), which is cited by Defendant, where the

6   agreement expressly relieves "defendant of liability."  In that case, the plaintiff alleged that a

7   broker breached fiduciary duties by failing to follow oral instructions.  But, the court found

8   that no such claim could be alleged in view of the parties' agreement that required instructions

9   to be in writing.  Here, on the other hand, the Agreement expressly provides that Defendant is

10  obligated to provide notice and an opportunity to cure margin requirements.  Defendant failed

11  to do so, and the Agreement does not relieve Defendant of its resulting liability to Plaintiff.

12  **IV.   THE FAC ALLEGES THAT DEFENDANT BREACHED THE IMPLIED**

13        **COVENANT OF GOOD FAITH AND FAIR DEALING IN THE AGREEMENT**

14        New York, like California, implies a covenant of good faith and fair dealing in the

15  written contracts (like the Agreement) pursuant to which neither party "shall do anything

16  which has the effect of destroying or injuring the right of the other party to receive the fruits of

17  the contract."  *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 407 (2d Cir. 2006).  As set

18  forth above, the Agreement plainly required Defendant to make reasonable efforts to notify

19  Plaintiff of the alleged  margin deficiency and allow Plaintiff a reasonable period of time to

20  cure that alleged margin deficiency.  Agreement, Section 7(b)(i).  FAC, ¶9, Exh. A.  Thus,

21  despite Defendant's assertions to the contrary, the "fruits of the contract" do include an

22  opportunity to cure any deficiencies in the Account before Defendant liquidated it.  *See*

23  Opposition at 11:17-20.

24        Defendant  ignores Section 7(b)(i), and instead, asserts that it had a unilateral right to

25  liquidate Plaintiff's account under Section 7(b)(ii) of the Agreement.  See Motion at 2:5-11,

26  8:4-8 (asserting that the Agreement gives Defendant "the right in its 'sole discretion' to

27  liquidate all or part of Plaintiff's positions and/or account through any means available,

28  'without prior notice to' Plaintiff for any situation in which, inter alia, Plaintiff's account is

under-margined, or has no equity or an equity deficit."). Yet, Defendant fails to recognize that, in exercising such discretion, it had an implied duty to first give Plaintiff reasonable notice and an opportunity to deposit sufficient margin. Such a duty arises from Section 7(b)(i) of the Agreement, which requires such reasonable notice and opportunity. If Defendant were correct, and its discretion to liquidate the account without notice was unlimited, then Section 7(b)(i) would be rendered meaningless and surplusage, which is an interpretation that this Court should avoid. *See Rothenberg v. Lincoln Farm Camp, Inc.*, 755 F.2d 1017, 1019 (2d Cir. 1985) (an interpretation "that gives a reasonable and effective meaning to all the terms of a contract is generally preferred to one that leaves a part unreasonable or of no effect").

Defendant likewise had an implied duty to provide Plaintiff with <u>meaningful</u> notice of a planned liquidation pursuant to Section 7(b)(i). Although Defendant contends that it complied with its notice obligation by sending Plaintiff an email in the middle of the night on February 11, 2016, immediately prior to liquidating the Account, that email gave Plaintiff absolutely no reason to believe that Defendant planned such a liquidation, or otherwise inform Plaintiff that any additional margin in the Account was immediately required. FAC, ¶15. Such insufficient notice is a further breach of the implied covenant of good faith and fair dealing in the Agreement.

The foregoing shows why Plaintiff's claim for breach of the implied covenant is not duplicative of his breach of contract claim. The breach of contract claim is founded upon Defendant's failure to provide notice and an opportunity to cure the alleged margin deficiency under Section 7(b)(i) of the Agreement. The breach of implied covenant claim is based upon Defendant's failure to comply with its implied duty to provide meaningful notice and opportunity to cure pursuant to Section 7(b)(ii) of the Agreement, and any other provision of the Agreement that Defendant contends gives it a unilateral right to liquidate without notice. If the result were otherwise, Defendant could avoid a breach of contract claim, and likewise avoid a breach of the implied covenant claim, simply by relying on Section 7(b)(ii) and ignoring Section 7(b)(i) of the Agreement. Such a result would completely destroy "the right of [Plaintiff] to receive the fruits of the contract." *Thyroff*, 460 F.3d at 407.

## V.    CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion to Dismiss in its entirety.

DATED: July 8, 2016                    THEODORA ORINGHER PC


By:        /s/
           Antony Buchignani
           Attorneys for Plaintiff
           CHARLES EVANS PATTERSON