United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES EVANS PATTERSON,<br><br>Plaintiff,<br><br>v.<br><br>E*TRADE CLEARING, LLC,<br><br>Defendant. | Case No.  16-cv-03388-DMR<br><br>**ORDER ON DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 8 |

Defendant E*TRADE Clearing ("ETC") moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss two of Plaintiff Charles Evans Patterson's five claims for relief in his first amended complaint ("FAC").  [Docket No. 8.]  Having considered the parties' submissions and oral argument, the court grants Defendant's motion.

## I.    BACKGROUND

Plaintiff makes the following allegations in the FAC.[1]  Plaintiff has been an ETC account holder for many years.  He opened his most recent futures account with ETC in 2014 ("the account").  Prior to opening the account, Plaintiff told ETC representative Andrew Valcik about a previous loss of funds that had occurred when a broker liquidated Plaintiff's futures position to cover margin requirements without first giving him an opportunity to deposit funds to cover the deficiency.  Plaintiff sought Valcik's confirmation that ETC would notify Plaintiff in the event that "such a situation were ever to occur in a futures account maintained with [ETC]."  FAC ¶ 8. Plaintiff alleges that Valcik "unequivocally confirmed that [ETC] would provide such notice, and an opportunity to deposit funds to satisfy margin requirements, prior to ever liquidating one of

---

[1] When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted).

Plaintiff's positions." *Id*.  The Futures Account Agreement covering the account contains the following provision:

> Market conditions permitting, E*TRADE Clearing agrees to make reasonable efforts to notify Customer of any margin call or deficiency and allow Customer a reasonable period of time to cure any margin deficiency.

FAC Ex. A (Futures Account Agreement (the "Agreement")) at § 7(b)(i)).  Based on Valcik's assurances, and what Plaintiff describes as the "plain language" of the contract, Plaintiff entered into the Agreement and opened the account at some point in 2014.

At some time on February 11, 2016, ETC liquidated the sole position in the account to cover a margin deficiency, causing Plaintiff to lose over $400,000 in equity.  Plaintiff alleges that prior to the liquidation, ETC never contacted Plaintiff to request additional funds to cover the margin requirements.  According to Plaintiff, as of 1:35 am PST on February 11, 2016, the equity in Plaintiff's account exceeded ETC's margin requirements.  Plaintiff received an email from one of ETC's Risk Analysts on February 11, 2016 at 1:38 am PST stating only, "Please call the Futures desk at [number]."  FAC ¶ 15.  Plaintiff alleges that the email gave him no reason to believe that ETC planned to liquidate the position in the account and did not otherwise notify him that additional funds were required.  *Id*.  According to Plaintiff, ETC feasibly could have notified him of any deficiency in his account, given the market conditions.

Plaintiff filed a complaint in Contra Costa County Superior Court on May 12, 2016, and filed the FAC on May 17, 2016.  Defendant removed the action to federal court on June 17, 2016.  Plaintiff brings five claims for relief: 1) breach of the Futures Account Agreement; 2) breach of the implied covenant of good faith and fair dealing; 3) breach of fiduciary duty; 4) negligence; and 5) violation of California Business and Professions Code § 17200.  ETC now moves to dismiss Plaintiff's second and third claims for breach of the implied covenant of good faith and fair dealing, and for breach of fiduciary duty.

## II.    LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint.  *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc*., 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted).  A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).  In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), overruled on other grounds by *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

As a general rule, a court may not consider "any material beyond the pleadings" when ruling on a Rule 12(b)(6) motion.  *Lee*, 250 F.3d at 688 (citation and quotation marks omitted).  However, "a court may take judicial notice of 'matters of public record,'" *id*. at 689 (citing *Mack v. S. Bay Beer Distrib*., 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith*, 307 F.3d at 1125-26.  The court need not accept as true allegations that contradict facts which may be judicially noticed.  *See Mullis v. U.S. Bankr*. *Court*, 828 F.2d 1385, 1388 (9th Cir. 1987).

## III.   DISCUSSION

The Agreement provides that "the rights and liabilities of the parties shall, in all respects, be governed by and construed in accordance with law of the State of New York, without regard to its conflict of law provisions."  Agreement § 15(i)(i).  The parties concur that New York law

1   governs Plaintiff's claims for purposes of this motion.

2       **A.**    **Breach of Fiduciary Duty**

3         To state a claim for breach of a fiduciary duty under New York law, a plaintiff must allege

4   "(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages

5   resulting therefrom." *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011).  ETC

6   argues that it did not owe a fiduciary duty to Plaintiff because Plaintiff's account was non-

7   discretionary.  According to ETC, New York law does not recognize a fiduciary duty between a

8   broker and its client in relation to a non-discretionary commodity trading account.

9         A non-discretionary account is one "in which the customer rather than the broker

10   determines which purchases and sales to make." *Leib v. Merrill Lynch, Pierce, Fenner & Smith,*

11   *Inc.*, 461 F. Supp. 951, 952 (E.D. Mich. 1978).  "A nondiscretionary customer by definition keeps

12   control over the account and has full responsibility for trading decisions."  *de Kwiatkowski v.*

13   *Bear, Stearns & Co., Inc.*, 306 F.3d 1293, 1302 (2d Cir. 2002); *see id.* at 1296 (a non-discretionary

14   trading account is "one where all trades require the client's authorization").  Under New York law,

15   "[t]he fiduciary obligation between a broker and customer . . . is limited to affairs entrusted to the

16   broker, and '[t]he scope of affairs entrusted to a broker is generally limited to the completion of a

17   transaction.'" *Bissell v. Merrill Lynch & Co., Inc.*, 937 F. Supp. 237, 246 (S.D.N.Y. 1996)

18   (second alteration in original) (quoting *Schenk v. Bear, Stearns & Co.*, 484 F. Supp. 937, 947

19   (S.D.N.Y. 1979)).  "The broker's duties ordinarily end after each transaction is done," *de*

20   *Kwiatkowski*, 306 F.3d at 1302, and "[i]n the absence of discretionary trading authority delegated

21   by the customer to the broker . . . a broker does not owe a general fiduciary duty to his client."

22   *Bissell*, 937 F. Supp. at 246 (citing *Schenk*, 484 F. Supp. 937 at 946-47); *see also Fekety v.*

23   *Gruntal & Co*., 595 N.Y.S.2d 190, 191 (1993) ("a broker does not, in the ordinary course of

24   business, owe a fiduciary duty to a purchaser of securities"); *Celle v. Barclays Bank P.L.C.*, 851

25   N.Y.S.2d 500, 501 (2008) ("brokers for non-discretionary accounts do not owe clients a fiduciary

26   duty").

27         Here, the Agreement was clearly non-discretionary because it vested Plaintiff with full

28   responsibility for making all trading decisions.  Specifically, it stated that ETC "is authorized to

4

1   purchase and sell contracts in Commodity Interests for Customer's account in accordance with

2   Customer's oral, written or electronically transmitted instructions," and that "Customer is fully

3   responsible for making all final decisions as to any transactions for Customer's account."

4   Agreement at § 6(a).

5       Plaintiff does not dispute that his account was non-discretionary.  Instead, he seizes on the

6   concept of discretion.  He seems to suggest that if a non-discretionary account carries no fiduciary

7   duty, then the opposite must be true: that the existence of discretion in an account must give rise to

8   a fiduciary duty.  Plaintiff thus argues that ETC owed him a fiduciary duty because a particular

9   contract term vested discretion in ETC under certain circumstances.  Under the Agreement, in the

10  event of a margin deficiency, ETC "retains, at all times, the right in its sole discretion to liquidate

11  all or part of Customer's positions and/or account through any means available, without prior

12  notice to Customer."  Agreement at § 7(b)(ii).[2]  According to Plaintiff, this provision conferred

13  specific discretionary authority on ETC, which gave rise to a fiduciary duty.

14      This is somewhat nonsensical.  Plaintiff argues that ETC owed him a fiduciary duty

15  because Section 7(b)(ii) vested ETC with discretion.  However, that provision gave ETC virtually

16  absolute discretion to liquidate Plaintiff's positions, without prior notice.  Given the breadth of

17  that discretion and authority, it is difficult to understand how ETC could have breached a fiduciary

18  duty by liquidating Plaintiff's holdings without reasonable notice.  Plaintiff goes on to argue that

19  ETC breached its fiduciary duty when it liquidated Plaintiff's account without making reasonable

20  efforts to provide Plaintiff with notice of the deficiency and an opportunity to cure, as provided in

21  Section 7(b)(i) of the Agreement, which is discussed above.  The court will analyze Plaintiff's

22  argument, despite its contorted nature.

23      None of the cases cited by the parties specifically address Plaintiff's argument that ETC

24  owed Plaintiff a fiduciary duty based on the liquidation provision in the Agreement.  ETC cites

25  *Fesseha v. TD Waterhouse Investor Services, Inc*., 761 N.Y.S.2d 22, 23 (2003), which involves

26

27  ───────────────

[2] The court may consider the terms of the agreement between the parties without converting the
motion to dismiss to a motion for summary judgment since Plaintiff attached the Agreement as an
28  exhibit to the FAC.  *See Branch*, 14 F.3d at 453.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    circumstances similar to those alleged here, but is distinguishable.  In *Fesseha*, an investor sued

2    his broker after it liquidated securities in his trading account to satisfy margin deficiencies without

3    giving him notice and an opportunity to cure.  *Id.*  The trial court dismissed the investor's breach

4    of fiduciary duty claim on the ground that "a broker does not owe a general fiduciary duty to his

5    client" in the absence of discretionary trading authority.  *Fesseha v. TD Waterhouse Investor*

6    *Services, Inc.*, 747 N.Y.S.2d 676, 682 (2002) (citations omitted).  The New York appeals court

7    affirmed the dismissal of the claim, holding that it "was properly dismissed since plaintiff opened

8    a non-discretionary trading account, and the relationship between plaintiff and defendant was

9    merely that of broker and customer."  *Fesseha*, 761 N.Y.S.2d at 24 (citations omitted).  However,

10   *Fesseha* does not help here, because it does not grapple with the question of whether a liquidation

11   provision that vests discretion in a broker gives rise to a fiduciary duty.

12        Plaintiff relies on *Conway v. Icahn & Co., Inc.*, 16 F.3d 504, 510 (2d Cir. 1994), but it is

13   also distinguishable.  In *Conway*, the plaintiff maintained a non-discretionary margin account with

14   the defendant broker Icahn & Co. ("Icahn").  Icahn cleared its transactions through another broker-

15   dealer, third party Cowen & Co. ("Cowen").  *Id.* at 505.  Plaintiff's agreement with Cowen

16   permitted Cowen to liquidate securities in his margin account in any manner and without prior

17   notice to the plaintiff, *id.* at 506, but Icahn was not a party to that agreement.  *Id.* at 508-09.  After

18   a "precipitous stock market decline," Cowen directed Icahn to liquidate securities in the plaintiff's

19   account to meet Cowen's minimum margin requirements.  *Id.* at 507.  Icahn immediately

20   liquidated the plaintiff's securities to cover the deficiency.  *Id.*  The plaintiff sued Icahn to recover

21   the losses that he sustained in connection with the sale of his securities.  A jury found in the

22   plaintiff's favor on his negligence and breach of fiduciary duty claims.  *Id.* at 508.  On appeal, the

23   Second Circuit held that, unlike the plaintiff's agreement with Cowen, the plaintiff's non-

24   discretionary account with Icahn required Plaintiff's authorization for all purchases and sales.

25   Therefore, "absent a waiver of notice running in its favor, Icahn had a duty to notify [the plaintiff]

26   prior to the execution of the sellout and to secure his consent as to the items to be sold."  *Id.* at

27   510.

28        Here, by contrast, the Agreement governing the parties' relationship contains a margin

6

United States District Court
Northern District of California

1   deficiency provision specifying that ETC as broker "retains, at all times, the right in its sole

2   discretion to liquidate all or part of Customer's positions and/or account through any means

3   available, without prior notice to Customer."  Agreement at § 7(b)(ii).  In *Conway*, there was no

4   such provision in the agreement between the plaintiff and Icahn, the broker who actually

5   liquidated his account.  *See Conway*, 16 F.3d at 509.

6          Plaintiff also cites *Jaksich v. Thomson McKinnon Securities, Inc.*, 582 F. Supp. 485, 502

7   (S.D.N.Y. 1984), and *Conte v. U.S. Alliance Federal Credit Union*, 303 F. Supp. 2d 220, 228 (D.

8   Conn. 2004).  Again, both are distinguishable.  In *Jaksich*, the opinion does not state whether the

9   plaintiff held a non-discretionary trading account.  However, the facts suggest that the broker had

10  some discretion to make trading decisions, because plaintiff was seeking "investment guidance,"

11  as she was "virtually ignorant as to what was happening."  *See* 582 F. Supp. at 488-91.  In *Conte*,

12  the plaintiff entered into a stock-secured loan agreement with his credit union to set up a secured

13  loan revolving credit plan.  303 F. Supp. 2d at 222-23.  The court discussed the general rule that a

14  bank does not have a fiduciary duty to its borrowers, but concluded that a factual question

15  remained as to whether the bank had exceeded the usual creditor-debtor relationship based on

16  review of the parties' dealings over thirty years, which included the bank's provision of

17  investment advice, as well as its prior course of conduct.  *Id.* at 228.

18         Based on the court's own research, it does not appear that any court has ruled on the

19  precise issue raised here, namely whether under New York law, a broker's discretion to liquidate

20  positions in the event of a margin deficiency gives rise to a fiduciary duty even though the account

21  is otherwise non-discretionary.  The court therefore turns to the general question of when a

22  fiduciary duty arises in a broker relationship.  Courts determining the existence of a fiduciary duty

23  under New York law examine "whether one person has reposed trust or confidence in the integrity

24  and fidelity of another who thereby gains a resulting superiority or influence over the first."

25  *Teachers Ins. & Annuity Ass'n of Am. v. Wometco Enters.*, Inc., 833 F. Supp. 344, 349-50

26  (S.D.N.Y. 1993).

27         Plaintiff argues that he has satisfied this inquiry at the pleading stage by alleging that he

28  "trusted [ETC] with substantial funds that he deposited into the account" after receiving ETC's

1   assurances regarding notice of and opportunity to cure any margin deficiency prior to liquidation,

2   including the corresponding provision in the parties' agreement (*see* Agreement at section 7(b)(i)).

3   Opp'n at 6.  He argues that these facts show that he "reposed trust or confidence in the integrity

4   and fidelity" of ETC, which gave rise to a fiduciary relationship between the parties.  *Id*. (citing

5   *Teachers Ins*., 833 F. Supp. at 349).  Plaintiff also argues that determining the existence of a

6   fiduciary relationship "requires a fact-specific inquiry," and that resolution of this issue is

7   inappropriate on a motion to dismiss.  *Id*. (citing *Roni LLC v. Arfa*, 18 N.Y.3d 846, 848 (2011)).

8        The court finds that Plaintiff has not alleged sufficient facts to support the existence of a

9   fiduciary relationship between the parties.  Plaintiff only addresses the first part of the test, which

10  focuses on whether he reposed trust or confidence in ETC's integrity and fidelity.  He ignores the

11  second part, which requires that ETC gained a "resulting superiority or influence over" him.  The

12  Second Circuit has recognized that in "'special circumstances,' a broker may owe a broader duty

13  to a client than a purely transactional one to prevent the brokers from taking 'unfair advantage of

14  their customers' incapacity or simplicity.'"  *Ciccone v. Hersh*, 530 F. Supp. 2d 574, 578 (S.D.N.Y.

15  2008) (quoting *de Kwiatkowski*, 306 F.3d at 1308-09).  Such circumstances "that render the client

16  dependent" include "a client who has impaired faculties, or one who has a closer than arms-length

17  relationship with the broker, or one who is so lacking in sophistication that de facto control of the

18  account is deemed to rest in the broker."  *de Kwiatkowski*, 306 F.3d at 1308.  Plaintiff does not

19  allege that any of these circumstances are present here.  *See, e.g., Ciccone*, 530 F. Supp. 2d at 579

20  (holding that the court was "not persuaded that Plaintiffs are the 'naïve and vulnerable client[s]'

21  who are protected by 'special circumstances.'" (quotation omitted)).  To the contrary, according to

22  the FAC, Plaintiff is a sophisticated investor who had been an ETC account holder "for many

23  years" and had millions of dollars of equity in his ETC accounts.  FAC ¶¶ 7, 11.  The FAC is

24  devoid of allegations that suggest that ETC gained "superiority or influence" over Plaintiff as a

25  result of their relationship, giving rise to a fiduciary relationship.  *See Teachers Ins*., 833 F. Supp.

26  at 349; *see also Roni LLC*, 18 N.Y.3d at 848 ("[a] fiduciary relation exists when confidence is

27  reposed on one side and there is resulting superiority and influence on the other" (quotation

28  omitted)).

United States District Court
Northern District of California

8

1    Since Plaintiff has failed to allege facts supporting the existence of a fiduciary relationship

2    between Plaintiff and ETC, his breach of fiduciary duty claim is dismissed.  Plaintiff is granted

3    leave to amend this claim, provided, however, that the amended claim is not duplicative of his

4    breach of contract claim.  *See, e.g., Zorbas v. U.S. Trust Co., N.A*., 48 F. Supp. 3d 464, 478

5    (E.D.N.Y. 2014) ("'where there [is] a formal written agreement covering the precise subject

6    matter of the alleged fiduciary duty, there is no actionable tort for a breach of fiduciary duty.'"

7    (quotation omitted)); *Pane v. Citibank, N.A*., 797 N.Y.S.2d 76, 77 (2005) (holding that the

8    defendant's actions cannot be "deemed a breach of fiduciary duty given a formal written

9    agreement covering the precise subject matter of the alleged fiduciary duty.").

10       **B.      Breach of the Implied Covenant of Good Faith and Fair Dealing**

11       ETC next moves to dismiss Plaintiff's claim for breach of the implied covenant of good

12   faith and fair dealing as duplicative of his breach of contract claim.  "New York law implies a

13   covenant of good faith and fair dealing, pursuant to which neither party to a contract shall do

14   anything which has the effect of destroying or injuring the right of the other party to receive the

15   fruits of the contract."  *Thyroff v. Nationwide Mut. Ins. Co*., 460 F.3d 400, 407 (2d Cir. 2006)

16   (quotation omitted).  "The implied covenant can only impose an obligation consistent with other

17   mutually agreed upon terms in the contract.  It does not add [ ] to the contract a substantive

18   provision not included by the parties."  *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 198-99

19   (2d Cir. 2005) (internal citations and quotation omitted).  "New York law . . . does not recognize a

20   separate cause of action for breach of the implied covenant of good faith and fair dealing when a

21   breach of contract claim, based on the same facts, is also pled."  *Harris v. Provident Life &*

22   *Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002).

23       Here, Plaintiff's breach of the implied covenant of good faith and fair dealing claim is

24   based upon ETC's alleged failure to provide notice and an opportunity to cure Plaintiff's margin

25   deficiency pursuant to the Agreement.  *See* FAC at ¶ 24.  This is the same factual predicate that

26   gives rise to Plaintiff's claim for breach of contract.  *See id.* at ¶¶ 18, 19.  Plaintiff's claim for

27   breach of the implied covenant of good faith and fair dealing is therefore redundant and must be

28   dismissed.  *See Matsumura v. Benihana Nat'l Corp*., 465 Fed. Appx. 23, 29 (2d Cir. 2012)

United States District Court
Northern District of California

9

("Plaintiffs based their breach of good faith claim on the same operative facts as their breach of contract claim; accordingly, the District Court did not err in dismissing the former claim as duplicative of the latter."); *see also Boart Longyear Ltd. v. Alliance Indus. Inc*., 869 F. Supp. 2d 407, 420 (S.D.N.Y. 2012) (dismissing as redundant breach of implied covenant of good faith and fair dealing claim "based on the same factual elements" as breach of contract claim).

As with Plaintiff's breach of fiduciary duty claim, Plaintiff is granted leave to amend his claim for breach of implied covenant of good faith and fair dealing, but only to the extent that it is not duplicative of his breach of contract claim.

## IV.    CONCLUSION

For the foregoing reasons, ETC's motion to dismiss is granted.  Plaintiff's claims for breach of fiduciary duty and breach of the implied covenant of the duty of good faith and fair dealing are dismissed with leave to amend.  Any second amended complaint must be filed within 14 days of the date of this order.  The court will conduct an initial case management conference on December 7, 2016 at 1:30 p.m.  A joint case management statement is due by November 30, 2016.

**IT IS SO ORDERED.**

Dated: November 9, 2016



Donna M. Ryu
United States Magistrate Judge

United States District Court
Northern District of California

10